# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| **SECOND AVE MUSEUM, LLC d/b/a** <br> **THE JOHNNY CASH MUSEUM,** <br> <br> Plaintiff, <br> <br> v. <br> <br> **RDN HERITAGE, LLC,** <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. _____ <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

For its Complaint against RDN Heritage, LLC ("Heritage"), Plaintiff Second Ave Museum, LLC d/b/a The Johnny Cash Museum ("Second Ave Museum") states as follows:

### OVERVIEW

This is an action for declaratory judgment and other relief. On April 12, 2012, Second Ave Museum entered into an agreement (the "Original Agreement") pursuant to which Heritage agreed to guarantee rent payments for the building housing The Johnny Cash Museum (the "Third Avenue Building") for which Second Ave Museum was otherwise responsible, and pursuant to which Heritage agreed to pay to Second Ave Museum $50,000 in exchange for certain sponsorship opportunities. Heritage's attorney represented both Heritage and Second Avenue Museum in the transaction – which constituted a conflict of interest (as to which Second Ave Museum was not informed and to which it did not consent) and a breach of the lawyer's fiduciary duty. As a result, Heritage was afforded extraordinary and overwhelmingly unequal bargaining power and wrongful advantage in the transaction, and Second Ave Museum was deprived of the opportunity to receive

1

independent legal advice.

In exchange for guaranteeing the rent on the Third Avenue Building, Heritage received a graduated percentage of the gross revenues generated from The Johnny Cash Museum for a period of up to ten years – with no cap or other limitations on the amount of revenue payable to Heritage. Heritage made rent payments other than from funds generated from revenues from The Johnny Cash Museum and paid to Heritage to Second Ave Museum only until mid-2013. Heritage has received over $3 million dollars from Second Ave Museum since 2012, and it is anticipated that Heritage will receive another $2 million by the end of the Term pursuant to the Original and Amended Agreements. Second Ave Museum had no meaningful or independent legal representation in the transaction, no meaningful bargaining power, and the financial terms of the Original Agreement are so unfair and one-sided that the agreement is unconscionable.

In October 2014, JRC Holdings, LLC purchased the Third Avenue Building, terminating the lease on the building. However, because Second Ave Museum had already entered the substantively unconscionable Original Agreement, Second Ave Museum was without bargaining power to renegotiate the unconscionable terms of the Original Agreement in any meaningful way. The parties entered subsequently into an Amended Agreement which – although also still unconscionable – reduced minimally Heritage's revenue participation.

The Original Agreement and its derivative, the Amended Agreement, are both substantively unconscionable and were procured through the wrongful conduct of Heritage and its conflicted attorney. Heritage's payment of $147,000 in rent – payments that were made mostly from royalties Second Ave Museum paid to Heritage and which ceased more than five years ago – has resulted in its receiving over $3 million in revenue over the last eight years, and the prospect of its receiving millions more. Such a benefit is tantamount to a usurious rate of interest for the

2

original use of Heritage's funds. Moreover, to demonstrate further the extent of Heritage's overreaching, Heritage – without a basis – now seeks a percentage of the revenue generated not only from The Johnny Cash Museum, but also from The Patsy Cline Museum – a wholly separate business.

Given the conflict of interest of Heritage's attorney and his breach of fiduciary duty, the grossly unequal bargaining power of the parties, the oppressive financial terms, and Heritage's new overreaching, Second Ave Museum seeks this Court's declaration that both the Amended and Original Agreements are unconscionable and, therefore, unenforceable, and that Second Ave Museum owes no further payments to Heritage. In addition or in the alternative, the Court should permit Second Ave Museum to rescind and/or reform the agreements and order Heritage to repay the unconscionably excessive funds it has received since 2012.

**THE PARTIES**

1. Second Ave Museum, LLC d/b/a The Johnny Cash Museum is a Tennessee limited liability company with its principal place of business located at 119 3rd Avenue South, Nashville, Tennessee 37201-2001.

2. RDN Heritage, LLC is a Wisconsin limited liability company with its principal office located at 203 North Genesee Street, Wittenberg, Wisconsin 54499-9154. RDN Heritage, LLC may be served with process through its registered agent, CT Corporation System, located at 800 South Gay Street, Suite 2021, Knoxville, TN 37929-9710.

**JURISDICTION AND VENUE**

3. This Court has personal jurisdiction over RDN Heritage, LLC because Heritage conducts business in the State of Tennessee and entered a contract with Second Ave Museum in Nashville, Tennessee, which contract was performed, in whole or in part, in the State of Tennessee.

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff is a citizen of the State of Tennessee and Defendant is a citizen of the State of Wisconsin; there is complete diversity; and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

## FACTUAL BACKGROUND

6. Second Ave Museum, LLC does business as The Johnny Cash Museum in downtown Nashville, Tennessee. The Johnny Cash Museum opened in the Third Avenue Building in April 2013 to honor the life and music of the country superstar, Johnny Cash. The Johnny Cash Museum houses the world's largest collection of Johnny Cash memorabilia and artifacts and is officially authorized by Cash's estate. Bill Miller, a Nashville businessman, is the managing member of Second Ave Museum, LLC.

7. RDN Heritage, LLC is a Wisconsin non-profit limited liability company. Heritage's previous owner, Robert D. Nueske (now deceased), was also the owner of "Nueske's Meat Products, Inc." ("Nueske's"). Nueske's was founded in 1933 in Wisconsin and distributes various meat products – including bacon, ham, poultry, and sausage – to retailers throughout the United States, including in Tennessee.

8. In 2011, Miller – who had a personal relationship with Johnny and June Cash – desired to open The Johnny Cash Museum in Nashville, Tennessee, and needed funding to assist with the finances of the operation. Miller had been acquainted previously with Nueske, and Nueske offered to invest in the business through his non-profit company, RDN Heritage, LLC. As Nueske knew, Miller had been unable to secure reasonable bank financing.

9. During Miller's discussions with Nueske, Nueske convinced Miller, in order to minimize legal fees associated with the deal, to use Nueske's Wisconsin attorney, Herbert C. Liebmann, III, to represent both Heritage and Second Ave Museum in the transaction. Miller and Second Ave Museum were then both unrepresented, and Miller, who was unsophisticated in legal matters and had no specialized knowledge of contract negotiations, felt immense pressure to agree to Nueske's request in order to secure the funding.

10. Neither Miller nor Second Ave Museum was advised that the attorney, Liebmann, had an ethical conflict of interest because he was representing parties who were directly adverse in the transaction. Moreover, neither Miller nor Second Ave Museum was advised about the disadvantages and potential risks of this joint representation, nor did they sign a conflict waiver agreeing to the representation. Liebmann drafted and sent the proposed agreement to Miller, who reviewed it and agreed to the terms without receiving independent legal advice.

11. On April 12, 2012, Second Ave Museum and Heritage signed the Sponsorship Agreement (the "Original Agreement") pursuant to which Heritage agreed to pay the monthly rent that Second Ave Museum was obligated to pay under a lease agreement for the Third Avenue Building (the "Lease"). Heritage agreed further to guarantee the Lease payments for an initial period of five years, and for an additional five-year term should Heritage so elect. A true and correct copy of the Original Agreement is attached as **Exhibit A.**

12. Heritage had disproportionate all the bargaining power during the negotiations, as Second Ave Museum needed financial assistance and Heritage took advantage of Second Ave Museum as a result of that knowledge. Further, Miller was deprived of the opportunity to receive independent legal advice due to Liebmann's conflict of interest.

13. The Term of the Original Agreement was for an initial period of five years, with Heritage given the option to extend the Term for an additional five years upon the same terms, in its sole discretion.

14. In addition to agreeing to make rent payments under the Lease, Heritage also agreed to pay to Second Ave Museum a lump sum of $50,000. Although the Original Agreement indicates that the $50,000 was to be applied toward the costs and expenses of design and construction of the leasehold improvements of The Johnny Cash Museum, which totaled approximately $300,000, in fact, the funds were consideration for considerable sponsorship opportunities for Nueske's Meat Products, Inc. at The Johnny Cash Museum.

15. In exchange for the $50,000, Second Ave Museum agreed to and did provide coveted sponsorship benefits to Nueske's Meat Product, Inc., including physical signage at The Johnny Cash Museum.

16. In exchange for Heritage's guaranteeing the rent payments, Paragraph 2(F) of the Original Agreement provided that Second Ave Museum would pay to Heritage, during the first five years, a percentage of gross revenues from The Johnny Cash Museum as follows:

- 15% of the first $600,000 of gross annual revenue;
- 12% of the next $200,000 of gross annual revenue;
- 10% of the gross annual revenue over $800,000.

17. Not surprisingly given Heritage's unequal bargaining power, the Original Agreement does not contain any provisions capping the revenues payable to Heritage or reducing Heritage's revenue participation if the amounts exceeded certain thresholds. Nor did the agreement provide for any right to terminate or reduce the revenue percentages upon termination of the Lease.

18. In the second five-year term, if exercised, Heritage would receive 10% of gross annual revenue. Notably, gross revenues were limited to those revenues generated from The Johnny Cash Museum and were not derivative of revenues generated from merely <u>any</u> business operating in the Third Avenue Building (owned by Ritzen Group, Inc. at the time).

19. In addition, both Nueske and Miller guaranteed personally the respective performances of the parties to the Original Agreement.

20. After execution of the Original Agreement, Heritage paid Second Ave Museum the $50,000 for the sponsorship opportunities.

21. Although Heritage was supposed to make the rent payments under the Lease, it arranged to pay Ritzen Group, Inc. directly and did not notify or account to Second Ave Museum concerning when payments were made and in what amount. Thus, Second Ave Museum could only infer that Heritage was making rent payments timely and in full but did not receive actual accountings from Defendant.

22. Per the Original Agreement, Second Ave Museum began paying Heritage the percentages from gross revenues generated by The Johnny Cash Museum in or about October 2012.

23. By mid-2013, the amount of royalties Second Ave Museum was paying Heritage greatly exceeded the amount of rent payments – so that, essentially, Heritage was paying the rent payments not out of its pocket but from revenues generated from The Johnny Cash Museum.

24. The Original Agreement was one sided and the financial terms so unreasonably unfair as to make the agreement unconscionable.

25. In 2014, JRC Holdings, LLC purchased the Third Avenue Building from Ritzen Group, Inc.

26. Because nothing in the Original Agreement provided a right to terminate if the Lease was no longer in force or effect or otherwise provided any reasonable limitations on the amounts payable to Heritage, and because Second Ave Museum was already trapped in an unconscionable agreement drafted by Heritage's attorney, Second Ave Museum's only option to try and get relief was to attempt to renegotiate the terms of the Original Agreement. Given Heritage's lack of meaningful leverage at this point, Second Ave Museum was in a poor bargaining posture. Although Second Ave Museum retained its own legal representation, counsel was left with the task of trying to make an unconscionable agreement simply less unconscionable.

27. As a result, on January 1, 2015, Heritage and Second Ave Museum entered into an Amended and Restated Sponsorship Agreement (the "Amended Agreement"). A true and accurate copy of the Amended Agreement is attached as **Exhibit B.**

28. The Amended Agreement restated and replaced the Original Agreement.

29. The Term of the Amended Agreement remained the same as the Original Agreement – *i.e.* ten (10) years from the date of the Original Agreement, or until April 12, 2022.

30. The Amended Agreement released both Miller and Nueske from their personal guarantees, and reduced slightly the percentage payable by Second Ave Museum to Heritage, as follows:

- Heritage receives 8% of Gross Revenue, which is defined as "the gross amounts, wither cash or on credit, collected from admission to and use of the Museum, including the event space and/or gift shop space, including ticket sales, without deduction (but not including any sales or other tax included in such admission price).

- Heritage also receives 10% of the Gross Profits from the sale of Cash merchandise at the Museum.

- In addition, Heritage receives 10% of the Gross Profits from the same of Cash Memorabilia, reproductions of Cash Memorabilia and other Sale Items (i.e., non-Cash Merchandise) sold in connection the Museum and gift shop.

31. Although the percentages payable to Heritage were reduced slightly in the Amended Agreement, the overall financial terms of the deal remained unconscionable and overwhelmingly favorable to Heritage.

32. On April 7, 2017, The Patsy Cline Museum opened on the second floor of the Third Avenue Building. The museum is home to an exclusive collection of Patsy Cline memorabilia as well as real-life artifacts once owned by the country singer, who died in a plane crash in 1963 at the age of 30.

33. Although The Johnny Cash Museum and The Patsy Cline Museum both operate out of the Third Avenue Building, they are separate corporate entities. A customer must buy a separate ticket to enter The Patsy Cline Museum; it is not physically or financially connected to The Johnny Cash Museum. In addition, the two museums do not share resources, revenue, financial accounts, or staff.

34. Second Ave Museum paid Heritage its percentage of gross revenues per the Original and Amended Agreements from April 2012 until October 2019 as follows:

35. In 2013, Second Ave Museum paid Heritage $92,592.82 in revenue.

36. In 2014, Second Ave Museum paid Heritage $366,783.05 in revenue.

37. In 2015, Second Ave Museum paid Heritage $340,412.15 in revenue.

38. In 2016, Second Ave Museum paid Heritage $489,960.07 in revenue.

39. In 2017, Second Ave Museum paid Heritage $596,186.94 in revenue.

40. In 2018, Second Ave Museum paid Heritage $652,411.91 in revenue.

41. For the first two quarters of 2019, Second Ave Museum paid Heritage $477,044.52 in revenue.

42. Since 2012, Second Ave Museum has paid Heritage more than $2,985,391.46. Heritage's rent payments, by contrast, total no more than $147,000 – most of which was funded by royalty payments from Second Ave Museum.

43. Even more egregious, in late 2019, Heritage – for the first time and without any basis – asserted that not only was it entitled to a percentage of the gross revenue from The Johnny Cash Museum but was also entitled to the same percentages of gross revenue from The Patsy Cline Museum.

44. There is no basis for Heritage's demand to receive a portion of the gross revenues from The Patsy Cline Museum, and such a demand evidences further Heritage's continued overreaching. The Patsy Cline Museum is a separate business which was never contemplated by the parties as a revenue source for Heritage nor referenced in the Original or Amended Agreements, nor did Second Ave Museum agree to pay any portion of those revenues to Heritage. Heritage's blatant overreaching evidences further the unconscionability of the agreements.

45. The financial terms of both the Original Agreement and the Amended Agreement were beyond the reasonable expectations of both parties, are oppressive, and are unconscionable. Second Ave Museum had little bargaining power and was deprived of the opportunity to receive independent advice about the terms of the agreement due to Liebmann's breach of his fiduciary duty. In fact, the disparity in the amount of consideration Heritage paid versus the amount of the payments received reveals that the inequality of the bargain is so manifest that it would shock the judgment of a person of common sense, and the terms are so oppressive that no reasonable person would make them, and no honest and fair person would accept them.

46. The financial terms of both the Original and Amended Agreement are substantively unconscionable – i.e. they are unreasonably harsh and unreasonably favorable to Heritage.

47. The oppressive terms of the agreements also violate the implied duty of good faith and fair dealing imposed in every contract.

48. Furthermore, the gross and shockingly inadequate consideration provided by Heritage, and Heritage's counsel's conflict of interest, are equivalent to fraud and, thus, Second Ave Museum is entitled to rescission and/or reformation of both the Original and Amended Agreements.

49. Second Ave Museum is entitled to recover the excessive payments made to Heritage and has no further obligation to pay any additional payments to Heritage, which payments are estimated to exceed $2 million over the next two years.

## COUNT I – DECLARATORY JUDGMENT
### (The Original and Amended Agreements are Unconscionable)
### 28 U.S.C. § 2201

50. Plaintiff restates and incorporates herein the allegations contained in Paragraphs 1-49.

51. A justiciable controversy exists regarding the parties' rights and obligations under the Original and Amended Agreements. The controversy is real and substantial and involves a genuine conflict of tangible interest and is not merely a theoretical dispute.

52. The issuance of a declaratory judgment by this Court will eliminate uncertainty and controversy among the Parties regarding the construction and interpretation of, and the enforceability of, the Original and Amended Agreements.

53. Plaintiff seeks this Court's declaration that the Original and Amended Agreements are unconscionable and unenforceable and that, as a result, the agreements are void or, in the

11

alternative and at a minimum, that the percentage provisions are unconscionable and unenforceable.

## COUNT II – DECLARATORY JUDGMENT
### (Defendant is not entitled to revenue from The Patsy Cline Museum)
### 28 U.S.C. § 2201

54. Plaintiff restates and incorporates herein the allegations contained in Paragraphs 1-53.

55. Neither the Original Agreement nor the Amended Agreement entitle Heritage to participate in any revenues generated from The Patsy Cline Museum.

56. Plaintiff further seeks this Court's declaration that Heritage is not entitled to any portion of the revenues generated from The Patsy Cline Museum.

## COUNT III –
## RESCISSION AND/OR REFORMATION OF THE CONTRACT

57. Plaintiff restates and incorporates herein the allegations contained in Paragraphs 1-56.

58. Under principles of equity, Plaintiff seeks to rescind and/or reform both the Original Agreement and the Amended Agreement because those agreements are unconscionable and unenforceable, were the result of unequal bargaining power, and were procured by fraudulent behavior as the attorney representing Heritage had a conflict of interest that he neither disclosed nor obtained Second Ave Museum's consent to waive.

59. Plaintiff seeks to rescind and/or reform the agreements because they are characterized by gross and shockingly inadequate consideration equivalent to fraud.

60. Plaintiff seeks to rescind or reform the contracts and place the parties to the position they occupied before the execution of the Original Agreement, including the repayment to Second

Ave Museum of all amounts that are unreasonable and excessive paid to Heritage since April 2012, less the actual amount of rent payments made by Heritage, if any.

**WHEREFORE,** Plaintiff demands judgment of the Defendant as follows:

1. That this Court declare that the Original Agreement is unconscionable and, therefore, unenforceable and that, as a result, Second Ave Museum owes no further obligations to Heritage;

2. That, in the alternative, this Court declare that the Original Agreement's royalty provisions are unconscionable and, therefore, unenforceable and that, as a result, Second Ave Museum owes no further obligations to Heritage;

3. That this Court declare that the Original Agreement's royalty terms violate the duty of good faith and fair dealing inherent in all agreements;

4. That this Court declare that the Amended Agreement is unconscionable and, therefore, unenforceable and that, as a result, Second Ave Museum owes no further royalty payments to Heritage;

5. That, in the alternative, this Court declare that the Amended Agreement's royalty provisions are unconscionable and, therefore, unenforceable and that, as a result, Second Ave Museum owes no further royalty payments to Heritage;

6. That this Court declare that the Amended Agreement royalty terms violate the duty of good faith and fair dealing inherent in all agreements;

7. That this Court permit Second Ave Museum to rescind and/or reform both the Original and Amended Agreements and recover the unreasonable, excessive and unconscionable amounts paid to Heritage since April 2012;

8. For such other and further relief as may be appropriate;

For general relief; and

## JURY DEMAND

Plaintiff demands a jury.

Respectfully submitted,

**SHACKELFORD, BOWEN, MCKINLEY & NORTON, LLP**

/s/ Jay S. Bowen
Jay S. Bowen, TN Bar No. 2649
Lauren Kilgore, TN Bar No. 30219
47 Music Square East
Nashville, TN 37203
P: 615-329-4440
F: 615-329-4485
jbowen@shackelford.law
lkilgore@shackelford.law

*Attorneys for Plaintiff*