IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| SECOND AVE MUSEUM, LLC *dba* THE JOHNNY CASH MUSEUM<br><br>    Plaintiff,<br><br>v.<br><br>RDN HERITAGE, LLC<br><br>    Defendant. | Civil Action No. 3:20-cv-00067<br><br>Jury Demand<br><br>Judge Trauger<br>Magistrate Judge Frensley |

**SECOND AVE MUSEUM, LLC *dba* THE JOHNNY CASH MUSEUM'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

RDN seeks in this case, as a remedy for Second Ave's purported breach of contract, to recover punitive damages and its attorney's fees. However, as a general rule, Tennessee law does not permit the recovery of punitive damages for a party's breach of contract where, as here, there is no accompanying tort or fraud claim. Similarly, Tennessee law does not permit the recovery of attorney's fees where, as here, there is no statutory or contractual basis to do so. In the limited cases in which Tennessee courts have permitted an award of punitive damages in a case involving breach of contract, the rulings were exceedingly narrow and, generally, confined to insurance law. For RDN to prevail on these claims, there would have to be an extraordinary expansion of Tennessee law. Instead, the Court should dismiss RDN's claim for punitive damages. Likewise, because Tennessee law does not recognize the availability for the recovery of attorney's fees in a breach of contract action, unless the contract provides as such, the Court should dismiss RDN's claim for attorneys' fees.

1

## BACKGROUND

Second Ave brought this action nearly two years ago, in January 2020, seeking, *inter alia*, a declaration that the 2012 Sponsorship Agreement (the "Original Agreement") and the derivative 2015 restated and amended agreement (the "Amended Agreement") between Second Ave and RDN Heritage, LLC ("RDN" or "Defendant") are unconscionable and unenforceable. (*See* Dkt. No. 1). RDN counterclaimed alleging breach of contract. (*See* Dkt. No. 12).

Merely weeks after initiating this lawsuit, the COVID-19 pandemic struck the United States. As set forth in detail in Second Ave's previous filings, the COVID-19 pandemic and ensuing governmental actions in response severely impacted Second Ave's financial condition. As a result, the royalty payments allegedly due RDN pursuant to the Amended Agreement were reduced significantly. Because the amount in controversy was greatly diminished, the cost-benefit analysis for Second Ave of continuing to litigate changed fundamentally. Specifically, Second Ave could no longer justify the cost of continuing litigation versus simply paying royalties to RDN. As such, on July 9, 2021, Second Ave filed a Rule 41(a) Motion for Voluntary Dismissal and notified RDN that it intended to resume making royalty payments, which it has. At the time of Second Ave's dismissal, RDN's motion for partial summary judgment as to liability on RDN's counterclaims was pending. The motion for summary judgment addressed liability only and deferred the issue of damages.

On September 20, 2021, the Court entered an Order, (Dkt. No. 144), and accompanying Memorandum, (Dkt. No. 143), which granted in-part and denied in-part both Second Ave's Motion for Voluntary Dismissal and RDN's Motion for Partial Summary Judgment. The Court dismissed Second Ave's affirmative claims and granted summary judgment as to liability for the bulk of RDN's claims. (*See* Order, Dkt. No. 104). This Order resulted in damages from Second Ave's

nonpayment of royalties and from breach of the sponsorship provisions as the only remaining issue to be determined. (*See id.*). RDN seeks, as part of its damages, an award of punitive damages and its attorney's fees for Second Ave's alleged "bad faith" and/or intentional breach of the contract. However, as discussed herein, Tennessee law does not permit the recovery of punitive damages or attorney's fees in this case.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[1] FED. R. CIV. P. 12(c). "'Rule 12(c) may be employed as a vehicle for raising several of the defenses enumerated in Rule 12(b), including the defense of failure to state a claim upon which relief may be granted.'" *Hasting v. First Comm. Mortgage*, 2018 WL 5808727, *1-*2 (M.D. Tenn. Nov. 6, 2018) (quoting *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979)); *see also Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989); *Becker v. Crounce Corp.*, 822 F. Supp. 386, 391 n.4 (W.D. Ky. 1993). A motion to dismiss for failure to state a claim can apply to both a claim of punitive damages, as well as for a claim of attorneys' fees. *See e.g.*, *Mitchell v. Lockert*, 2014 WL 2618570, at *2 (M.D. Tenn. Jun. 11, 2014) (magistrate judge recommending

---

[1] In this case, the Court's considering of this Motion will not delay trial, which is currently set for May 17, 2022. (*See* Dkt. No. 97). Discovery is currently stayed, (*see* Dkt. No. 105), and the parties have yet to conduct any expert discovery or discovery on damages, further decreasing any likelihood that the consideration of this Motion may delay trial.

On December 31, 2021, RDN filed a motion to lift the discovery stay and amend the current case management order. (*See* Dkt. No. 145). Second Ave opposed that motion, (*see* Dkt. No. 146), and counsel for Second Ave informed counsel for RDN that Second Ave intended to file the instant motion. As was noted in Second Ave's response, a resolution of the issues in this motion will greatly reduce the scope and cost for both parties during the reopened discovery, which is specifically limited to the issue of any damages.

3

that the Court grant defendants' motion to dismiss plaintiff's claim of punitive damages and dismiss plaintiff's punitive damages claims where plaintiff failed to establish a basis for those claims in her complaint); *see also Hill v. Performa Entertainment, LLC*, 2010 WL 446888, at *1 (W.D. Tenn. Feb. 1, 2010) ("A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, and the complaint contains no direct or inferential allegations that suggest the existence of a contract for attorney's fees between Plaintiff and the [ ] Defendants. Plaintiff's claim for attorney's fees is DISMISSED.") (emphasis in original).

When a failure to state a claim is raised via a motion for judgment on the pleadings, the district court evaluates the motion using the same standard applied to a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6). *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n.1 (6th Cir. 1988); *Becker*, 822 F. Supp. at 391 n.4 (W.D. Ky. 1993); *Kinney v. Mohr*, No. 2:13-cv-1229, 2017 WL 1395623, *4 (S.D. Ohio Apr. 19, 2017). "Thus, the same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6)[.]" *Lacy v. Ohio Dept. of Job and Family Servs.*, 2017 WL 1397522, *1 (S.D. Ohio Apr. 19, 2017). In sum, when a Rule 12(c) motion is based on an asserted failure to state claim upon which relief can be granted, "'[t]he only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss.'" *Ruppe v. Knox Cty. Bd. Of Educ.*, 993 F. Supp.2d 807, 809 (E.D. Tenn. 2014) (quoting *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003)). This Court has held that the appropriate legal standard is as follows:

> *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and its progeny provide the applicable standard for motions to dismiss for failure to state a claim under Rule 12(b)(6). For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Id. at* 678. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018) (citing *Fritz*). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

*Hastings*, 2018 WL 5808727, *2.

## ARGUMENT

I. **Tennessee Law Does Not Permit an Award of Punitive Damages as a Remedy for Breach of Contract.**

Tennessee law does not recognize punitive damages as a remedy for breach of contract in cases where, as here, there is no accompanying tort or fraud claim. RDN's request for punitive damages in this case seeks an extraordinary expansion of Tennessee law, and the Court should grant Second Ave's Motion and preclude a recovery of punitive damages in this case. The Tennessee Practice Series on Contract Law explains the current state of Tennessee law on this issue:

> Punitive (or exemplary) damages do not compensate a plaintiff, but punish and deter the wrongdoer, and deter others from committing similar wrongs in the future. Primarily because these damages are noncompensatory, and because punitive damages vindicate public wrongs rather than private rights, the general rule is that they are not recoverable in a breach of contract case, **no matter how egregious or intentional the breach**, unless the conduct constituting the contract violation is also a tort for which punitive damages can be appropriate. The burden here is on the plaintiff suing in contract to establish tortious conduct that involves fraud, malice, gross negligence, oppression, evil motives, conscious indifference or reckless conduct implying the disregard of social obligations. In Tennessee, a court

5

> may award punitive damages only where the defendant commits the above acts, and where the plaintiff shows by clear and convincing evidence the defendant's intentional, fraudulent, malicious or reckless conduct.

22 Tenn. Prac. Contract Law and Practice § 12:30—Punitive Damages (Sept. 2021) (emphasis added).

The Tennessee Supreme Court in *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992), set forth the general rule that "a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Id.* at 901. However, this recitation of the rule is limiting, not expansive, and does not stand for the proposition that an award of punitive damages is available in all breach of contract cases where the breach is "intentional". *See* 22 Tenn. Prac. Contract Law and Practice § 12:30.

Despite this, RDN appears to rely on *Hodges* as a basis for a recovery of punitive damages, as its Counterclaims set forth nothing more than the bare recitation of the *Hodges* elements to support such a claim. Specifically, the Counterclaims allege, *in toto*:

(1) With respect to its claim for breach of contract for past nonpayment, RDN merely alleges that: "[Second Ave] has intentionally and/or willfully failed to make payments to RDN Heritage for the past two quarters…." (*See* Answer and Countercls., Dkt. No. 12, ¶ 54).

(2) Likewise, RDN alleges that it "lost expected revenue" as a result of Second Ave's "intentional and/or willful failure to pay…." (*Id.*, ¶ 55).

(3) With respect to its prospective breach of contract claim, RDN relied on the same set of facts as for its nonpayment claim: "[Second Ave] has intentionally and/or willfully failed to make payments to RDN Heritage for the past two quarters and has filed this lawsuit in bad faith in attempt [sic] to avoid future payments to RDN Heritage." (*Id.*, ¶ 61).

(4) With respect to the sponsorship terms of the Amended and Restated Sponsorship Agreement, RDN, again, merely alleges that: "[u]pon information and belief, [Second Ave] has intentionally and/or willfully failed to comply with the terms of any the [sic] sponsorship benefits…." (*Id.*, ¶ 66).

(5) With respect to the nondisclosure provision, RDN again recites *Hodges* verbatim and pleaded that: Second Ave "intentionally and/or willfully filed a public Complaint against RDN Heritage…." (*Id.*, ¶ 75).

This is the entire basis for which RDN pleads it is entitled to punitive damages. As set forth herein, these pleadings are entirely insufficient to form the basis for a recovery of punitive damages, which, even if adequately-plead, would not be awardable in a routine breach of contract action.

As Tennessee caselaw subsequent to *Hodges* makes clear, the *Hodges* Court sought to limit the availability of punitive damages in cases in which punitive damages were *already available* as a remedy. *See Scott v. Houston*, 2010 WL 680984, at *8 (Tenn. Ct. App. Feb. 26, 2010) (noting that *Hodges* established the "threshold of wrongdoing" for which punitive damages are awardable and that it "did not purport to parcel out cases into specific fact patterns and hold that punitive damages would be available in one type case and not another."). By its very language, *Hodges* was a <u>limiting</u> decision that narrows the scope and availability of punitive damages in Tennessee: "By [ ] restricting the availability of punitive damages, we seek to avoid 'dull[ing] the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct.'" 833 S.W.2d at 901 (quoting *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985)). In this case, RDN seeks to apply *Hodges* expansively by seeking punitive damages in a routine breach of contract case—an

overreaching extension of that opinion that was expressly not intended by the Tennessee Supreme Court.

Tennessee courts have subsequently held that *Hodges* is not determinative as to whether or not punitive damages are available in breach of contract actions. As the Tennessee Court of Appeals held in *Scott*: "*Hodges* did not purport to parcel out cases into specific fact patterns and hold that punitive damages would be available in one type case and not another. Instead, *Hodges* established a threshold of wrongdoing and burden of proof below which punitive damages would not be allowed." 2010 WL 680984, at *8. The Court went on to reiterate the inapplicability of punitive damages in breach of contract actions:

> The defendant argues this is a contract action controlled by the sales contract and that punitive damages are not available in breach of contract actions. It is true that punitive damages are generally not available for mere breach of contract. However, where the breach involves "tortious conduct" proven by clear and convincing evidence to be intentional, fraudulent, malicious, or reckless, punitive damages are available.

*Id.* (internal citations omitted). Based on this analysis, the Court ultimately held that punitive damages were available in that case, not for breach of contract, but as a "wrongful possession case" in which there was underlying tortious conduct. *Id.*

Recent Tennessee caselaw bears out this distinction—that an award of punitive damages in breach of contract cases require some underlying tort. The Tennessee Supreme Court opinion in *Goff v. Elmo Greer & Sons Const. Co., Inc.*, 297 S.W.3d 175 (Tenn. 2009), a case RDN has pointed to in this action, is instructive. There, the owners of real property filed suit for breach of contract <u>and</u> the tort of nuisance against a construction company who had contracted to widen a highway adjacent to their property. *Id.*. The property owners had previously contracted with the construction company that allowed it to place equipment and construction materials on their land

8

in exchange for compensation, which was the basis of their breach of contract claim. *See id.*. Following the completion of the road project, the property owners filed suit claiming that the construction company failed to pay the amount due under the contract and caused blasting damage to their house and vehicles. *Id.*. The property owners also alleged that the construction company illegally buried debris, including large tires and steal piping, on their property once the contract was complete—which conduct served as the basis for their nuisance claims. *See id.*.

In that case, the plaintiff sought, and the court ultimately awarded, punitive damages. *Id.* at 183-84. The Tennessee Court of Appeals affirmed the trial court with respect to liability, but reversed its award of punitive damages, finding that the "trial court improperly considered Tennessee's environmental laws in approving the award." *Id.* at 179. On appeal, the Tennessee Supreme Court reinstated the punitive damages award. *Id.* at 199. As the Tennessee Supreme Court's opinion in *Goff* makes clear, the availability of punitive damages in the case stemmed from the extra-contractual tort claims by the property owners, *i.e.*, their nuisance claim. *See id.* ("For the foregoing reasons, we conclude that the evidence supports the award of punitive damages and that the trial court did not err in considering the State's environmental laws in approving the punitive award."). The punitive damages award was wholly unrelated to the breach of contract claim. *See id.*. The opinion spends a significant amount of time discussing environmental torts, environmental hazards, and Tennessee's environmental laws. *See id.* at 184-86. This same discussion is replete through its analysis of the application of a punitive damages remedy in that context. *See id.* at 186-190 ("The jury could have reasonably concluded that Elmo Greer intentionally buried the tires to avoid this expense. Viewing these circumstances as a whole, we have no difficulty finding that the record contains material evidence supporting the jury's finding by clear and convincing evidence that Elmo Greer acted intentionally or recklessly."). There is

9

nothing in the *Goff* opinion, or elsewhere in Tennessee case law, that supports the availability of punitive damages as a remedy in simple breach of contract cases such as the one before this Court.

The only other circumstances in which punitive damages have been awarded for "bad faith" conduct in a breach of contract action are confined to the insurance contract context, which is a unique area of the law governed by a complex statutory scheme. *See Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013) (discussing the applicability to Tennessee's bad faith refusal to pay statute, Tenn. Code Ann. § 56-7-105, which provides for the exclusive statutory remedy for an insured's bad faith refusal to pay on a policy). The line of insurance cases awarding punitive damages are limited in scope and distinct from the facts of this case. As with the plaintiff in *Goff*, the plaintiff in *Riad* also asserted an extra-contractual claim with statutory remedies— violation of the Tennessee Consumer Protection Act. *Id.* at 266.

Another notable case in this context is *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348 (6th Cir. 2018). There, the Sixth Circuit discussed in detail the aforementioned line of insurance cases and called into question the constitutionality of Tennessee's statutory cap on punitive damages as being in violation of Article I, Section 6 of the Tennessee Constitution. *Id.* at 364-70. In one less controversial part of that opinion, the Sixth Circuit opined that punitive damages are available for some breach of contract claims (still in the bad-faith insurance context) and affirmed the district court's denial of that defendant's motion to dismiss the plaintiff's punitive damages claim. *Id.* at 359-60.

10

Case 3:20-cv-00067    Document 148    Filed 01/07/22    Page 10 of 18 PageID #: 2225

While the language in the *Lindenberg* opinion might seem contrary to Second Ave's position, the subsequent treatment of *Lindenberg* by both state and federal courts indicates that it is likely no longer good law with respect to this issue.[2]

First, in *McClay v. Airport Management Services, LLC*, 596 S.W.3d 686 (Tenn. 2020), the Tennessee Supreme Court went out of its way to comment on the Sixth Circuit's opinion in *Lindenberg*:

> While the instant case involves the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102, we acknowledge that the United State Court of Appeals for the Sixth Circuit in *Lindenberg v. Jackson National Life Insurance Company*, 912 F.3d 348 (6th Cir. 2018), held that the statutory cap on punitive damages in Tennessee Code Annotated section 29-39-104 violates the right to a jury trial under the Tennessee Constitution. [ ] We also find the reasoning of the majority in Lindenberg unpersuasive in this case. Moreover, in Lindenberg, we declined to accept a certified question from the federal district court regarding the constitutionality of the statutory cap on punitive damages because antecedent questions regarding the availability of those damages had not also been certified. Lindenberg v. Jackson Nat'l Life Ins. Co., No. M2015-02349-SC-R23-CV (Tenn. June 23, 2016) (per curiam).

596 S.W.3d at 693, n. 6. In this context, the Tennessee Supreme Court expressly called into question the availability, at all, of punitive damages under the common law in a breach of contract action. *See id.*. Sixth Circuit Judge Larsen, who concurred in part and dissented in part in the *Lindenberg* opinion, agreed with this interpretation of the Tennessee Supreme Court's denial of the certified questions in *Lindenberg* and noted that "it seems the questions certified might not

---

[2] The plaintiff in *Lindenberg* sought to certify questions of Tennessee law regarding the constitutionally of the damages cap statute pursuant to Tennessee Supreme Court Rule 23. In declining to certify the question, the Tennessee Supreme Court noted that: "It appears to this Court that it would be imprudent for it to answer the certified questions concerning the constitutionality of the statutory caps on punitive damages in this case in which the question of the availability of those damages in the first instance has not been and cannot be answered by this Court." *See Lindenberg*, No. 2:13-02657 (W.D. Tenn. Jun. 27, 2017), Dkt. No. 200-1, (Rule 23 Tennessee Supreme Court Opinion).

have been 'determinative of the cause' under Tennessee Supreme Court Rule 23." 912 F.3d at 371-72 (concurring in part and dissenting in part). Judge Larson goes on to state the basis of her dissent—that she would "accept [the Tennessee Supreme Court's] invitation" and certified a question "determinative on the cause", i.e. whether punitive damages are available, at all, under the common law for a breach of contract in Tennessee. *Id.*

Second, this Court in *Nolen v. C.R. Bard Inc.*, 2021 WL 1264539 (Apr. 6, 2021) (Trauger, J.), noted that:

> since *Lindenberg* was decided, the Tennessee Supreme Court has been overtly critical of the Sixth Circuit's reasoning, calling it "unpersuasive" and declining to adopt the Sixth Circuit's interpretation of the Tennessee Constitution in the Tennessee Supreme Court's consideration of a challenge to a similar statutory damages cap. *McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 693 n.6 (Tenn. 2020). This court, therefore, finds it very unlikely that the Tennessee Supreme Court would embrace the holding in *Lindenberg* or extend it to invalidate even more statutory provisions. Regardless of what this court would decide if federal law were at issue, Nolen's argument based on the Tennessee Constitution is unavailing pursuant to the court's obligation to try to reach the conclusion that the Tennessee Supreme Court would reach.

2021 WL 1264539, at *7-8.

"'When resolving an issue of state law,' a federal court must 'look to the final decisions of that state's highest court, and if there is no decision directly on point, then [it] must make an *Erie* guess to determine how that court, if presented with the issue, would resolve it.'" *Id.* at *8 (quoting *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016) (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013) (internal citations omitted)). While the criticism on *Lindenberg* focuses on other portions of the Sixth Circuit's opinion, it is not apparent that the Tennessee Supreme Court would adhere to the remainder of the Sixth Circuit's opinion, which it called "unpersuasive." *McClay*, 596 S.W.3d at 693, n. 6.

12

Conversely, as applied to the facts of this case, it is apparent that the Tennessee Supreme Court would not adopt the approach taken by the Sixth Circuit in *Lindenberg* to permit the recovery of punitive damages. There is no Tennessee case law in which punitive damages were awarded in a simple breach of contract, like the one presented here, and RDN has not alleged any underlying tortious conduct or fraud claim. Instead, RDN claims it is entitled to punitive damages because Second Ave's breach of the contract was "intentional" or in "bad faith." Even if the breach was intentional and egregious as RDN alleges, there is simply no basis for the recovery of punitive damages in this case. Punitive damages are a creature of tort law and awarding them in run-of-the-mill breach of contract cases merely because the breach was "intentional" or in "bad faith" would essentially eviscerate the distinction between tort law and contract law. The contract at issue in this case is far afield of the insurance contracts at issue in *Riad* and the other insurance cases. This is a straightforward breach of contract claim; one for which punitive damages are not awardable.

RDN's Answer and Counterclaim only superficially addresses its basis for punitive damages. In multiple places in its Counterclaims, RDN states that it should be entitled to punitive damages for Second Ave's "intentional and/or willful" breach of contract. (*See e.g.*, Answer and Countercls., Dkt. No. 12, ¶ 57, Prayer for Relief D). This is the basis on which RDN alleges that it is entitled to punitive damages. RDN's bare recitations of the *Hodges* elements aside, it is clear on the face of the pleadings that it has no basis to recover punitive damages.

If the Court permits RDN to move forward with its claim for punitive damages, it would be not only a deviation from Tennessee law, but also would also open the door to advantage-seeking forum-shopping plaintiffs who, knowing this Court would now allow an award of punitive damages in routine breach of contract cases, would be incentivized to file suit in this Court instead

of Tennessee state courts where such remedies are not available. *See* 22 Tenn. Prac. Contract Law and Practice § 12:30—Punitive Damages (Sept. 2021). This is the precise type of forum shopping that the *Erie* doctrine is designed to prevent. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Even assuming, for purposes of this Motion, as the Court must, that Second Ave breached the Amended Agreement intentionally, willfully, and in bad faith, RDN is not entitled to an award of punitive damages. The Answer and Counterclaims are devoid of any tort claim, allegation of tortious conduct by Second Ave, fraud, or any other allegation that might serve as the basis for an award of punitive damages. RDN's claim is simply that Second Ave stopped paying royalties pursuant to the Amended Agreement on purpose and in nonspecific "bad faith" – that is not sufficient to recover punitive damages. Because Tennessee does not recognize the remedy of punitive damages in this case, Second Ave respectfully requests that the Court grant its Motion and dismiss RDN's claim for punitive damages.

**II.      Tennessee Law Does Not Recognize an Award of Attorneys' Fees in this Case.**

RDN fails to plead any basis for an award of attorneys' fees in this action. The Supreme Court of Tennessee has extensively ruled on the ability of parties to recover attorney's fees in breach of contract actions:

> Tennessee, like most jurisdictions, adheres to the "American rule" for award of attorney fees. *John Kohl & Co. v. Dearborn & Ewing,* 977 S.W.2d 528, 534 (Tenn. 1998); *Pullman Standard, Inc. v. Abex Corp.,* 693 S.W.2d 336, 338 (Tenn. 1985). Under the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case. *Taylor,* 158 S.W.3d at 359; *John Kohl,* 977 S.W.2d at 534.

*Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 309 (Tenn. 2009); *see also Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 555 S.W.3d

14

Case 3:20-cv-00067   Document 148   Filed 01/07/22   Page 14 of 18 PageID #: 2229

671, 704-07 (Tenn. 2019) (declining to award attorney's fees in a breach of contract case where there was no explicit provision awarding attorneys' fees).

The policy considerations supporting Tennessee's adoption of the American rule have just as extensively been discuss by Tennessee courts:

> First, since litigation is inherently uncertain, a party should not be penalized for merely bringing or defending a lawsuit. Second, the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included paying the fees of their opponent's lawyer. Third, requiring each party to be responsible for their own legal fees promotes settlement. Fourth, the time, expense, and difficulty inherent in litigating the appropriate amount of attorney's fees to award would add another layer to the litigation and burden the courts and the parties with ancillary proceedings. Thus, as a general principle, the American rule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case.

*House v. Estate of Edmondson,* 245 S.W.3d 372, 377 (Tenn. 2008) (citations omitted); *see also Cracker Barrel Old Country Store, Inc.*, 284 S.W.3d at 309.

With respect to cases involving breach of contracts, Tennessee only recognizes one exception to the American rule: "when a contract *specifically* or *expressly* provides for the recovery of attorney fees." *Cracker Barrel Old Country Store, Inc.*, 284 S.W.3d at 309 (emphasis in original). This bright-line rule has been recognized time and again as the only exception to the American rule recognized in Tennessee. *See e.g.*, *Individual Healthcare Specialists, Inc.*, 555 S.W.3d at 707 (declining to award attorneys' fees based on the terms on an indemnity provision); *House*, 245 S.W.3d at 377 ("The American rule provides that a party in a civil action may not recover attorney's fees absent a specific contractual or statutory provision providing for attorney's fees…."); *Kultura, Inc. v. Southern Leasing Corp.,* 923 S.W.2d 536, 540 (Tenn. 1996) (holding that the term "any loss" does not include an award for attorney fees); *Pullman Standard,* 693 S.W.2d at 338 ("We continue to adhere to the rule in Tennessee that attorneys' fees are not

recoverable in the absence of a statute or contract specifically providing for such recovery…."); *Pinney v. Tarpley,* 686 S.W.2d 574, 581 (Tenn. Ct. App. 1984) ("In the absence of an express agreement to pay attorney's fees for enforcement of a contract, such are not recoverable in Tennessee.").

In this case, there is no contractual basis for RDN to seek its attorneys' fees, and RDN does not allege otherwise. Both the Sponsorship Agreement and the Amended Agreement are silent with respect to an award of attorneys' fees. (*See* Compl., Exs. A-B, Dkt Nos. 1-2, 1-3). RDN admits as much in its Answer and Counterclaims—there is no reference to any such provision, and the only reference attorneys' fees at all comes in its general prayer for relief. (*See* Answer and Countercls., Dkt. No. 12, Prayer for Relief E) ("That RDN Heritage be awarded its costs and attorneys' fees[.]"). Because RDN fails to plead any contractual basis—or any basis at all—for an award of attorneys' fees, the Court should grant Second Ave's Motion and dismiss its claim for attorney's fees. *See Boone v. Comcast/Version*, 2011 WL 1258050 at *3 (E.D. Tenn. Mar. 31, 2011) ("As the complaint fails to plead a factual basis to support the imposition of liability against any defendant under any federal law, the complaint is subject to dismissal for failure to state a federal claim upon which relief may be granted.") Second Ave respectfully requests that the Court grant its Motion and enter judgment on the pleadings that RDN is not entitled to recover attorneys' fees in this case as pleaded in its Answer and Counterclaims, (Dkt. No. 12).

## CONCLUSION

For the foregoing reasons, Second Ave respectfully requests that the Court grant the Motion and issue an order that, as a matter of law, RDN is not entitled to recover punitive damages or attorneys' fees with respect to its breach of contract claims.

Respectfully submitted,

**SHACKELFORD, BOWEN, MCKINLEY & NORTON, LLP**

/s Jay S. Bowen
Jay S. Bowen, TN Bar No. 2649
Lauren Kilgore, TN Bar No. 30219
Jacob Clabo, TN Bar No. 36760
1 Music Circle South, Suite 300
Nashville, TN 37203
P: 615-329-4440
F: 615-329-4485
jbowen@shackelford.law
lkilgore@shackelford.law
jclabo@shackelford.law

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Jay S. Bowen, hereby certify that on this January 7, 2022, a copy of *Second Ave Museum's Memorandum in Support of its Motion for Partial Summary Judgment* was served on the following:

**BASS, BERRY & SIMS, PLC**

Jessalyn Zeigler
Sarah Miller
Garrah Carter-Mason
150 3rd Ave. S. Ste. 2800
Nashville, TN 37201
P: 615-742-6200
JZeigler@bassberry.com
SMiller@bassberry.com
Garrah.cartermason@bassberry.com

*Counsel for Defendant RDN Heritage, LLC*

/s Jay S. Bowen