# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **SECOND AVE MUSEUM, LLC d/b/a** | ) | |
| **THE JOHNNY CASH MUSEUM,** | ) | |
| | ) | |
| **Plaintiff/Counter-defendant,** | ) | |
| | ) | **Case No. 3:20-cv-00067** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **RDN HERITAGE, LLC,** | ) | |
| | ) | |
| **Defendant/Counter-plaintiff.** | ) | |

## <u>MEMORANDUM and ORDER</u>

Before the court are the following motions: (1) the Motion for Protective Order (Doc. No. 101) filed by plaintiff Second Avenue Museum, LLC d/b/a The Johnny Cash Museum ("Second Ave"); (2) Second Ave's Motion for Judgment on the Pleadings (Doc. No. 147); and (3) a Motion for Leave to File a Surreply (Doc. No. 157), filed by defendant RDN Heritage, LLC ("RDN") in connection with the Motion for Judgment on the Pleadings.

As set forth herein, all three motions will be denied.

## I. BACKGROUND

This case has a lengthy and tortuous history, which the court summarizes here insofar as it is relevant to the pending motions. Second Ave, a Tennessee limited liability company with its principal place of business in Nashville, operates The Johnny Cash Museum, which is officially authorized by Johnny Cash's estate. Bill Miller, a Nashville businessman, is the managing member of Second Ave. Second Ave obtained funding to open the Johnny Cash Museum from defendant RDN pursuant to a series of agreements, including an original Sponsorship Agreement, effective

April 12, 2012 ("Original Agreement"), and the January 1, 2015 Amended and Restated Sponsorship Agreement ("Amended Agreement").

Second Ave filed suit in January 2020, seeking a judicial declaration that the Original Agreement and Amended Agreement were both void or voidable as unconscionable, due to RDN's attorney's alleged conflict of interest and breach of fiduciary duty, the allegedly "grossly unequal bargaining power of the parties, the oppressive financial terms, and [RDN's] overreaching." (Doc. No. 1, at 3.) In addition to seeking a declaration, the plaintiff also sought to "rescind and/or reform" both contracts and the recovery of all "unreasonable and excessive" fees paid by Second Ave to RDN since April 2012. (*See id.* at 11–13.) RDN filed an Answer, denying liability, and Counterclaims for breach of contract by the plaintiff. (Doc. No. 12.)

In November 2020, the plaintiff filed a Motion to Compel, seeking the discovery of documents that RDN had withheld as subject to attorney-client privilege. Second Ave maintained that RDN's counsel had jointly represented both parties to the Original Agreement and, therefore, that the communications between RDN's counsel and RDN's principal related to the formation of that agreement were discoverable by Second Ave. The undersigned referred the Motion to Compel to Magistrate Judge Frensley, who denied it, finding that the plaintiff had not presented any evidence in support of its claim of joint representation. (*See* Doc. No. 71, at 13 ("The Court finds that Second Ave has not established that any such privilege exists as to Second Ave/Mr. Miller because Second Ave has not shown that such an attorney-client relationship existed in the matters of the Original Agreement . . . . Neither is there any evidence that Mr. Nueske [RDN's now-deceased principal] waived his privilege over the disputed documents when he occasionally discussed his lawyers' advice with Mr. Miller or forwarded one of their emails to him.").) Notably, RDN sought attorney's fees in connection with successfully defending against the Motion to

Compel, under Rule 37 of the Federal Rules of Civil Procedure. Its request for fees has been fully briefed but has not yet been resolved by Magistrate Judge Frensley.

After filing a Motion for Partial Summary Judgment in February 2021, RDN sought to stay discovery pending the resolution of any objections to the Magistrate Judge's ruling on the Motion to Compel and pending resolution of the Motion for Partial Summary Judgment. The court granted RDN's alternative request for a 90-day extension of all discovery deadlines and subsequently granted Second Ave's request to extend its deadline for responding to the Motion for Partial Summary Judgment until it had the opportunity to depose RDN's corporate designee—who also happened to be the attorney whom the plaintiff accused of having a conflict of interest.

In light of the various pending motions and requests to extend deadlines, the court entered a Third Amended Case Management Order, which extended the deadlines for discovery and expert disclosures and set a new dispositive motion deadline of December 20, 2021. (Doc. No. 96.) The court also reset the jury trial to a later date—May 17, 2022. (Doc. No. 97.)

In July 2021, Second Ave filed its Motion for Protective Order and supporting Memorandum of Law (Doc. Nos. 101, 102), as well as a Motion for Voluntary Dismissal (Doc. No. 100). After conducting a telephone conference with the parties, the court entered an order staying all discovery pending further order of the court, holding Second Ave's Motion for Protective Order in abeyance, and setting an extended briefing schedule for RDN's Motion for Partial Summary Judgment. (Doc. No. 105.)[1] The parties, respectively, filed responses to each other's motions and replies in support of their own motions. RDN also filed a Surreply in

---

[1] In August 2021, RDN filed a Motion for Rule 11 Sanctions and supporting Memorandum. (Doc. Nos. 129, 130.) That motion remains pending, but the court will address it in a separate ruling.

opposition to Second Ave's Motion for Voluntary Dismissal, and both parties filed several motions to exceed page limitations, all of which were granted.

In September 2021, the court issued an Order granting, in all important respects, RDN's Motion for Partial Summary Judgment. (Doc. No. 144.) Specifically, in granting RDN's motion, the court dismissed, with prejudice, Second Ave's claims for a declaration that the Original and Amended Agreements were unconscionable and for rescission or reformation of the agreements. With respect to RDN's counterclaims, the court found that RDN was entitled to judgment in its favor on its claims for breach of contract and to judicial declarations to the effect that the payment provisions of the Amended Agreement were enforceable and that it was entitled to an accounting and audit of the plaintiff's financial records, in accordance with the terms of the Amended Agreement. Having dismissed with prejudice the primary claims in the plaintiff's Complaint in the course of ruling on RDN's Motion for Partial Summary Judgment, the court denied the plaintiff's Motion for Voluntary Dismissal, insofar as it sought the dismissal without prejudice of the same claims.[2] Aside from RDN's still pending Motion for Sanctions (and request for attorney's fees incurred in connection with the plaintiff's Motion to Compel), the ruling on these two motions left little to be resolved in this case other than the amount of RDN's damages for Second Ave's breach of contract.

On December 31, 2021, RDN filed a Motion to Lift Stay and Amend Case Management Order, specifically requesting that the stay of discovery entered in August 2021 be lifted and that the parties be permitted to conclude discovery related to RDN's damages, including the issue of

---

[2] Second Ave's Motion for Voluntary Dismissal was granted with respect to Count II of the Complaint, which sought a declaration that RDN was not entitled to revenue from a completely separate entity, the Patsy Cline Museum, which has never been a significant focus of the parties' litigation.

punitive damages. RDN also submitted a proposed Fourth Amended Case Management Order setting new discovery deadlines but retaining the parties' May 17, 2022 trial date. Second Ave opposed the motion on the grounds that it anticipated filing a motion "regarding the issues of the availability of punitive damages and attorneys' fees in this case" and that any order permitting discovery relevant to the defendant's claim of punitive damages might be premature. The court conducted a telephone conference with the parties, during which it indicated that the court would rule in due course on any motion the parties might file but that, meanwhile, the defendant was entitled to conduct discovery. The court thereafter entered an Order lifting the stay on discovery and also entered the Fourth Amended Case Management Order. (Doc. Nos. 150, 151.)

Meanwhile, on January 7, 2022, Second Ave filed a Motion for Judgment on the Pleadings and supporting Memorandum, citing Rule 12(c) and seeking the dismissal of RDN's claims, in its Answer and Counterclaims, for punitive damages and attorney's fees. (Doc. Nos. 147, 148.) In filing this motion, the plaintiff did not acknowledge the expiration of the deadline for dispositive motions or request an extension thereof. The court nonetheless directed RDN to respond to the motion and authorized the plaintiff to file an optional reply. (Doc. No. 149.) The defendant has now filed a Response, and the plaintiff filed its Reply. (Doc. Nos. 153, 155.) RDN thereafter filed its Motion for Leave to File a Surreply. (Doc. No. 157.)

## II.    MOTION FOR JUDGMENT ON THE PLEADINGS

Although last chronologically, the court will address first the Motion for Judgment on the Pleadings. The plaintiff argues that Tennessee law does not permit the recovery of punitive damages for breach of contract unless the breach of contract is accompanied by some independent tortious conduct on the part of the breaching party and that RDN has no basis for seeking attorney's fees in this case, as the parties' contracts did not provide for the recovery of attorney's fees.

In response, RDN argues that: (1) the motion should be denied, because it was filed outside the deadline for dispositive motions; (2) Tennessee law permits the recovery of punitive damages in breach of contract cases, assuming the breaching party's conduct is sufficiently egregious; and (3) while the parties' contracts do not provide for attorney's fees, attorney's fees are a "valid consideration" in the punitive damages analysis, and it has two pending motions for attorney's fees that are supported by other provisions of the Federal Rules of Civil Procedure, including its Motion for Sanctions under Rule 11 and its request for fees under Rule 37.

In its Reply, besides reiterating its initial arguments, Second Ave insists that its motion is "properly before the Court" but that, if the court is inclined to deny the motion, "it should, instead, certify this question of state law to the Tennessee Supreme Court"—specifically, the question of "the availability of punitive damages for breach of contract in Tennessee." (Doc. No. 155, at 1.) RDN seeks to file a brief Surreply in order to address the request for certification. (Doc. Nos, 157.)

## A.    Timeliness of Motion

Second Ave's failure even to recognize its motion as untimely or to seek leave to file it after the deadline is troubling, but the court will nonetheless exercise its discretion to consider the motion.

Under Rule 16, a scheduling order generally should not be modified "except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). Whether the granting of such a motion would prejudice the party opposing modification should also be taken into consideration. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). While the Sixth Circuit recognizes the moving party's diligence as the "primary measure of Rule 16's 'good cause' standard," *id.* (citation omitted), and Second Ave's lack of diligence in this particular instance is beyond purview, the court nonetheless finds that good cause exists to retroactively extend the

scheduling order to permit the late filing of Second Ave's Rule 12(c) motion and this court's consideration of that motion.

First, if Second Ave had sought permission, the court would have granted it. The questions raised—although matters that clearly could and should have been raised much earlier in this litigation—will need to be answered prior to trial of this matter, and they have bearing on the scope of permissible discovery as well. In other words, the court is going to have to rule at some point on the availability of punitive damages and attorney's fees in this case, so it might as well be now.

Second, no prejudice will accrue to RDN by the extension of the scheduling order to permit consideration of Second Ave's motion, aside from its being required to brief the matter, particularly given that the outcome is largely favorable to RDN. Moreover, RDN would likely have had to supply briefing on the issues raised at some point, and it cannot establish that the outcome of the motion would have been different or more favorable if it had been filed prior to the expiration of the deadline for filing dispositive motions. *Accord Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (finding no prejudice based on the same rationale). In addition, consideration of this motion will not affect the other deadlines in this case.

Accordingly, despite the motion's untimeliness, the court will consider it on the merits.

**B.     The Availability of Punitive Damages in Breach of Contract Actions**

Thirty years ago, the Tennessee Supreme Court articulated the standard for punitive damages that still prevails today: "In Tennessee, . . . a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Further, "because punitive damages are to be awarded only in the most egregious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence." *Id.* In addition, a Tennessee statute provides that punitive damages may

be awarded in "a civil action," if the "claimant proves by clear and convincing evidence that the defendant against whom punitive damages are sought acted maliciously, intentionally, fraudulently, or recklessly," and the statute does not limit the type of civil action in which punitive damages may be sought. Tenn. Code Ann. § 29-39-104(a)(1).

*Hodges* itself involved a claim of retaliatory discharge, a tort claim, but the court did not expressly address the type of case for which punitive damages were—or were not—available. The Tennessee Supreme Court, however, has expressly recognized that punitive damages are available for breach of contract. In *Rogers v. Louisville Land Co.*, 367 S.W.3d 196 (Tenn. 2012), the plaintiff argued that an award of punitive damages was warranted based solely on her breach of contract claim. While the court affirmed the reversal of the award of punitive damages in that case based on the absence of proof that the defendants' conduct fell among "the most egregious of wrongs," *id.* at 212, it also confirmed the availability of punitive damages in breach of contract cases:

> [a]lthough as a general matter, punitive damages are not available in a breach of contract case, punitive damages may be awarded in such a case under certain circumstances. However, an award of punitive damages is limited to "the most egregious cases" and is proper only where there is clear and convincing proof that the defendant has acted either "intentionally, fraudulently, maliciously, or recklessly."

*Id.* at 211 n.14 (quoting *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009); citing *Hodges*, 833 S.W.2d at 901; other internal citations omitted); *accord Riad v. Erie Ins. Exch.*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013) (finding that the question of whether punitive damages were appropriate in a bad faith breach of insurance contract case was properly submitted to the jury). Further, under Tennessee law, the question of whether punitive damages are available is nearly always one for the jury. *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 365 (6th Cir. 2018) (citing *Se. Greyhound Lines, Inc. v. Freels*, 144 S.W.2d 743, 744 (Tenn. 1940)).

The court is not persuaded by Second Ave's reliance on an unreported Tennessee Court of Appeals case stating that punitive damages are available in breach of contract cases only "where the breach involves 'tortious conduct' proven by clear and convincing evidence to be intentional, fraudulent, malicious, or reckless." *Scott v. Houston*, No. E2009-01118-COA-R3-CV, 2010 WL 680984, at *8 (Tenn. Ct. App. Feb. 26, 2010) (citing 22 Tenn. Practice, Contract Law & Practice § 12:30 (2009)). Under Tennessee law, unreported opinions are considered persuasive authority rather than controlling authority, Tenn. R. Sup. Ct. 4(G)(1), and, on this point, there is controlling authority to the contrary from the Tennessee Supreme Court and reported Tennessee Court of Appeals cases issued both prior to, and more recently than, *Scott*. Because the question has been answered, the court will not address the plaintiff's request that the court certify the question to the Tennessee Supreme Court.[3]

In this case, RDN alleges in its Counterclaims that Second Ave's allegations and litigation position as laid out in the Complaint are "indefensible" (Doc. No. 12 ¶ 49), that Second Ave "intentionally and/or willfully" breached the Amended Agreement in effect between the parties (*see, e.g.*, *id.* ¶¶ 54, 57, 61, 66), and that it filed this lawsuit in "bad faith in attempt to avoid future payments" due RDN under the Amended Agreement (*id.* ¶ 61). While a breach of contract that is merely intentional—indeed, it is probable that most contract breaches involve intentional conduct—is unlikely to be sufficiently "egregious" to warrant punitive damages, these allegations, coupled with the allegations of bad faith, are sufficient at the pleading stage to state a claim for

---

[3] The plaintiff cites a Tennessee Supreme Court opinion denying a request to certify a different question as indicating that the question of whether punitive damages were permitted in a breach of contract case was one that had not been answered by that court, but that is not what the court stated. Instead, the court noted that the "issue of the availability of the common law remedy of punitive damages *in addition to the statutory remedy of the bad faith penalty* is one which ha[d] not before been addressed" by that court. *Lindenberg v. Jackson Nat'l Life Ins. Co.*, No. M2015-02349-SC-R23-CV (Tenn. June 23, 2016) (emphasis added).

punitive damages.

Second Ave's Motion for Judgment on the Pleadings as to RDN's claim for punitive damages, therefore, will be denied.

### C.    RDN's Claim for Attorney's Fees

Tennessee has long adhered to the "American rule" with regard to attorney's fees, pursuant to which "a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009); other citations omitted). RDN concedes that there is no contractual or statutory basis for attorney's fees in this breach of contract action, but it argues that other recognized exceptions allow for recovery of fees in this case.

First, it argues that its claim for punitive damages provides a basis to obtain attorney's fees, because its expenses, including attorney's fees, are a factor that may be considered in determining the amount of punitive damages to be awarded. (Doc. No. 153, at 9 (citing *Hodges*, 833 S.W.2d at 901; *Overton v. Westgate Resorts, Ltd.*, No. E2014-00303-COA-R3-CV, 2015 WL 399218, at *9 (Tenn. Ct. App. Jan. 30, 2015)).) However, that the amount of attorney's fees a party has paid may be a factor to be considered in determining the amount of a punitive damages award does not mean that a punitive damages award provides an independent basis for awarding attorney's fees.

More persuasively, RDN points to its claim for attorney's fees under Rule 37 and, separately, its claim for attorney's fees as a sanction in its Rule 11 motion. Rule 37 provides, in relevant part, that, if a party brings a motion to compel discovery and that motion is denied, the court may require "the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's

fees." Fed. R. Civ. P. 37(a)(5)(B). Under Rule 11(b), a party and/or its attorney may be sanctioned for, among other things, "presenting to the court a pleading, written motion, or other paper" for "any improper purpose" or that contains factual contentions that are not "warranted on the evidence." Fed. R. Civ. P. 11(b)(1) & (3). When a motion for sanctions is filed, the court may, "[i]f warranted," award attorney's fees incurred in connection with the motion to the prevailing party. Fed. R. Civ. P. 11(c)(2). In addition, the sanction itself may include the payment of "reasonable attorney's fees and other expenses directly resulting from the violation" that warrants the filing and granting of a Rule 11 motion. Fed. R. Civ. P. 11(c)(4).

In other words, RDN may be entitled to an award of attorney's fees under either Rule 37 or Rule 11. Moreover, apart from these rules, "[a] district judge has inherent equitable power to award attorneys' fees for 'bad faith' or frivolous conduct of a case. This power extends to parties as well as attorneys." *In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987) (internal citations omitted). "In order to award attorney fees under this bad faith exception, a district court must find [1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'" *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010) (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)). "[T]he bad-faith exception [to the American rule] resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper 'is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 n.10 (1991)).

RDN has alleged from the outset of this litigation that Second Ave filed suit in bad faith and for an improper purpose. The bad-faith exception to the American rule also provides a basis

through which it may recover attorney's fees in this case. Thus, on this point too, the plaintiff's motion must be denied.

For the reasons set forth above, the plaintiff's Motion for Judgment on the Pleadings will be denied in its entirety. RDN's motion to file a surreply will be denied as unnecessary.

## III.     MOTION FOR PROTECTIVE ORDER

In its Motion for Protective Order, Second Ave asks the court to enter a protective order that protects it from being required to respond to RDN's Sixth Set of Requests for Production of Documents at all and, further, from responding to any further discovery (written discovery or deposition testimony) other than on the topic of RDN's damages on its counterclaims. (Doc. No. 102, at 5.) Second Ave characterizes the discovery in RDN's Sixth Set of Requests as related solely to the "collectability of any judgment and determining where Second Ave's assets might be–which are irrelevant to the claims or defenses in this litigation" and, consequently, not authorized by Rule 26. (*Id.* at 8.) Second Ave claims generally that the requests contained in RDN's Sixth Set of Requests seek information not relevant to damages, are meant to annoy Second Ave and increase its litigation costs, and are disproportionate to the importance of the remaining issues at stake.

Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"[T]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). At the same time, "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes

of developing meritorious claims." *Bauer v. Wyndham Vacation Resorts, Inc.*, No. 3:18-CV-262-TAV-DCP, 2021 WL 2472899, at *3 (E.D. Tenn. Mar. 18, 2021) (citations omitted). Ultimately, the district court "retains discretion to determine whether a discovery request is too broad or oppressive." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)

Finally, Rule 26(b)(2)(C) provides as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

Fed. R. Civ. P. 26(b)(2)(C)(i).

In this case, the court entered the Order staying discovery in July 2021, prior to ruling on this Motion for Protective Order. At the same time, the court ordered that this motion be held in abeyance and directed the defendant that it need not respond to it. (Doc. No. 105.) The court has now lifted the stay on discovery and, despite the absence of a response from RDN, will deny Second Ave's Motion for Protective Order.

The court notes, in particular, that Second Ave does not object to specific requests as burdensome or cumulative. Instead, it argues that the entire Sixth Set of Requests was served to be burdensome and to run up costs, and it seeks not to have to respond at all to the Sixth Set of Requests. At the conference call conducted on January 14, 2022, the court informed the parties that RDN would be entitled to conduct discovery on Second Ave's financial condition, insofar as such discovery related to RDN's punitive damages claim. The discovery that Second Ave characterizes as going only to the collectability of a judgment pertains to punitive damages. In addition, Second Ave's financial condition is relevant to RDN's assertions that it filed this lawsuit, and continued to pursue it, in bad faith.

While some courts have held that a party seeking punitive damages must make some kind of *prima facie* factual showing in support of its claim for punitive damages before being permitted to take discovery related to punitive damages, other courts have not required such a showing. *See Bauer*, 2021 WL 2472899, at *3 (citing *Zielke v. Vision Hosp. Grp., Inc.*, No. 1:14-CV-362-SKL, 2015 WL 9876950, at *2–3 (E.D. Tenn. Nov. 3, 2015)). In this case, neither party has sought summary judgment on the issue of punitive damages, but the dispositive motion deadline has passed, and the court has concluded that RDN has stated a viable claim for punitive damages.

RDN is entitled to take discovery relating to Second Ave's financial condition.

## IV. CONCLUSION AND ORDER

For the reasons set forth herein, Second Ave's Motion for Judgment on the Pleadings (Doc. No. 147) and Motion for Protective Order (Doc. No. 101) are **DENIED**. The denial of the Motion for Protective Order is without prejudice to Second Ave's ability to seek protection from specific discovery requests that it contends are oppressive, duplicative, or disproportionate to the importance of the discovery sought.

RDN's Motion for Leave to File a Surreply (Doc. No. 157) is likewise **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge