## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **SECOND AVE MUSEUM, LLC d/b/a** | ) | |
| **THE JOHNNY CASH MUSEUM,** | ) | |
| | ) | |
| **Plaintiff/Counter-defendant,** | ) | |
| | ) | **Case No. 3:20-cv-00067** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **RDN HERITAGE, LLC,** | ) | |
| | ) | |
| **Defendant/Counter-plaintiff.** | ) | |

## MEMORANDUM

Before the court is the Motion for Sanctions (Doc. No. 129) filed by defendant RDN Heritage, LLC ("RDN"), to which plaintiff Second Ave Museum, LLC d/b/a The Johnny Cash Museum ("Second Ave") has filed a Response, supported by a number of declarations (Doc. Nos. 135, 135-1, 135-2, 135-3, 135-4). RDN has filed a Reply. (Doc. No. 140.) For the reasons set forth herein, the motion will be denied.

## I.     BACKGROUND

This case has a lengthy history, most of which the court has summarized elsewhere, more than once. As relevant here, Second Ave, a Tennessee limited liability company with its principal place of business in Nashville, operates The Johnny Cash Museum. Bill Miller, a Nashville businessman, is the managing member of Second Ave. Based on Bill Miller's close friendship with Robert Nueske, Second Ave obtained the funding to open the Johnny Cash Museum from defendant RDN, an organization formed by Nueske solely for that purpose, pursuant to a series of agreements, including an original Sponsorship Agreement, effective April 12, 2012 ("Original

Agreement"), and the January 1, 2015 Amended and Restated Sponsorship Agreement ("Amended Agreement"). Nueske died in 2015.

Second Ave filed suit in January 2020, seeking a judicial declaration that the Original Agreement and Amended Agreement were both void or voidable as unconscionable, due to RDN's attorney Herbert Liebmann's alleged conflict of interest and breach of fiduciary duty, the allegedly "grossly unequal bargaining power of the parties, the oppressive financial terms, and [RDN's] overreaching." (Doc. No. 1, at 3.) In addition to requesting such a judicial declaration, the plaintiff sought to "rescind and/or reform" both contracts and to recover all "unreasonable and excessive" fees paid by Second Ave to RDN since April 2012. (*See id.* at 11–13.) RDN filed an Answer, denying liability, and Counterclaims for Second Ave's breach of the Amended Agreement. (Doc. No. 12.) In addition to damages for breach of contract, RDN seeks punitive damages and attorney's fees, based on Second Ave's allegedly intentional and willful breach of contract and bad faith filing of the Complaint initiating this lawsuit. (*Id.* at 24.)

In November 2020, after discovery had been underway for a number of months, the plaintiff filed a Motion to Compel the court to "overrule" RDN's assertion of attorney-client privilege in connection with communications between Herbert Liebmann, as RDN's attorney, and Robert Nueske, RDN's principal. (*See* Doc. No. 37, at 1.) Second Ave asserted that such communications were not covered by the attorney-client privilege, or, in any event, were not privileged as to Second Ave and its principal, Bill Miller, because Liebmann had jointly represented both Nueske/RDN and Miller/Second Ave in connection with the transaction that culminated in the execution of the Original Agreement. (*See* Doc. No. 38, at 1 (asserting that Liebmann "undertook a joint representation when he provided advice and counsel to both Second Ave and RDN Heritage in the negotiations of the Original Sponsorship Agreement as well as

related subsequent agreements, to Second Ave's detriment").) The undersigned referred the Motion to Compel to Magistrate Judge Frensley, who denied it, finding that Second Ave had not presented any competent evidence in support of its claim of joint representation. (*See* Doc. No. 71, at 13 ("The Court finds that Second Ave has not established that any such privilege exists as to Second Ave/Mr. Miller because Second Ave has not shown that such an attorney-client relationship existed in the matters of the Original Agreement . . . . Neither is there any evidence that Mr. Nueske waived his privilege over the disputed documents when he occasionally discussed his lawyers' advice with Mr. Miller or forwarded one of their emails to him.").) Notably, RDN sought attorney's fees in connection with successfully defending against the Motion to Compel, under Rule 37 of the Federal Rules of Civil Procedure. Magistrate Judge Frensley recently denied that request, finding that Second Ave raised legally legitimate arguments, even though the court ultimately found them to be erroneous. (Doc. No. 159, at 4–5.)

In July 2021, Second Ave filed a Rule 41(a) Motion for Voluntary Dismissal (Doc. No. 100), in which it asserted that, in light of the COVID-19 pandemic's striking just weeks after Second Ave initiated this lawsuit, the shut-down orders issued by the Metropolitan Government of Nashville and Davidson County in response to the pandemic, specifically including the "Safer as Home" Order issued on March 22, 2020, mandating the closure of non-essential businesses such as the Johnny Cash Museum, the resulting decimation of Nashville's tourism industry, and the effect of these developments on Second Ave's "bottom line," it had become "clear that the economics of the litigation and Second Ave's financial circumstances no longer justified the cost of the litigation." (Doc. No. 100, at 3.) On that basis, Second Ave sought the court's permission to dismiss its claims without prejudice. (*Id.* at 6–7.) RDN strenuously opposed the Motion for Voluntary Dismissal on the grounds that the motion (1) ignored RDN's already pending Motion

for Partial Summary Judgment; (2) misstated the procedural course of the case; (3) falsely blamed the pandemic as the reason for seeking the dismissal of its "wrongful lawsuit"; and (4) ignored the court's ruling on the Motion to Compel. (Doc. No. 108, at 1.) In addition, RDN specifically requested that the court defer ruling on the Motion for Voluntary Dismissal "until the 21-day waiting period for RDN to file its Rule 11 Motion has expired and RDN has thereafter filed its Rule 11 Motion." (*Id.* at 2.) RDN apparently served Second Ave with a copy of its Motion for Sanctions and accompanying Memorandum on July 23, 2021, the same day it filed its Response to Second Ave's Motion for Voluntary Dismissal. (*See* Doc. No. 129, at 2.) In accordance with Rule 11(c)(2), the Motion for Sanctions was filed with the court just over twenty-one days later.

In September 2021, the court issued an Order granting, in all important respects, RDN's Motion for Partial Summary Judgment. (Doc. No. 144.) Specifically, in granting RDN's motion, the court found that RDN was entitled to judgment in its favor on its Counterclaims for breach of contract and its request for a declaration that it was entitled to an "accounting" under the Amended Agreement, essentially leaving only the matter of its damages to be resolved. The court noted that Second Ave, in responding to the Motion for Partial Summary Judgment, did "not interpose a defense to the enforcement of the [Amended] Agreement based on unconscionability or otherwise." (Doc. No. 143, at 17.) Instead, it simply posited, without pointing to actual evidence, that it "maintain[ed] its belief that the unfairness of the Amended Agreement would render it unenforceable." (*Id.* (quoting Doc. No. 114, at 13).) Second Ave, in fact, having filed its Motion for Voluntary Dismissal, raised little defense to RDN's Motion for Partial Summary Judgment. The court, as a result, readily concluded that RDN was entitled to summary judgment on nearly all of the plaintiff's claims in the Complaint, dismissing with prejudice Second Ave's claim that the Amended Agreement was unconscionable and unenforceable and Second Ave's claim for

rescission or reformation of that agreement. Regarding the Original Agreement, Second Ave, while essentially conceding every fact set forth in RDN's Statement of Undisputed Material Facts, and despite not filing its own statement of facts as to which it contended there was a material factual dispute, continued to insist that Liebmann had improperly represented both Miller/Second Ave and Nueske/RDN in the negotiations of that Agreement, without notifying Miller that this joint representation constituted a conflict of interest or obtaining a conflict waiver from him. Second Ave also argued that Miller had reasonably believed that Liebmann was acting as his attorney and that the court should not give preclusive effect to the Magistrate Judge's denial of Second Ave's Motion to Compel based on his finding that there was no evidence of joint representation.

The court, while accepting the Magistrate Judge's finding that there was no evidence of joint representation or breach of any ethical duty by Liebmann, did not actually reach a finding that the Original Agreement or its payment terms were or were not unconscionable—nor did RDN seek judgment as a matter of law on that basis. Instead, the court concluded that, in executing the 2015 Amended Agreement, Second Ave had waived any claims related to the 2012 Original Agreement and, specifically, its payment terms, as unconscionable or otherwise. RDN was granted summary judgment with respect to Second Ave's claims pertaining to the Original Agreement on that basis. (Doc. No. 143, at 35.) Alternatively, the court also found that the plaintiff's unconscionability claim was barred by the doctrine of laches and that it would be inequitable under all the particular circumstances presented in this case to permit Second Ave to proceed with its unconscionability claim as to the Original Agreement. (*Id.* at 37.) Finally, the court found that the remedy of rescission or reformation was not available with respect to the Original Agreement. (*Id.* at 39.) Having found that RDN was entitled to judgment in its favor with respect to the Original and Amended Agreements, the court denied Second Ave's Motion for Voluntary Dismissal as to

those claims. Second Ave's motion was granted only with respect to its request for a declaration related to RDN's claim of entitlement to proceeds from a completely separate museum, the Patsy Cline Museum, which RDN did not actually contest. (*Id.* at 44.) That claim, therefore, was dismissed without prejudice.

On January 7, 2022, Second Ave filed a Motion for Judgment on the Pleadings and supporting Memorandum, citing Rule 12(c) and seeking the dismissal of RDN's claims for punitive damages and attorney's fees set forth in its Answer and Counterclaims. The court recently denied that motion, citing, among other factors, the pending Motion for Sanctions as a basis for the recovery of attorney's fees.[1]

## II.    RULE 11 STANDARDS

Rule 11 states, in relevant part:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(1)–(3). Assuming the opposing party has been given "notice and a reasonable opportunity to respond," "the court may impose an appropriate sanction on any attorney, law firm,

---

[1] The court also cited the possible availability of fees under Rule 37 as a basis for denying Second Ave's Motion for Judgment on the Pleadings. Following entry of the court's Order denying the motion, Magistrate Judge Frensley entered the Order denying RDN's request for fees under Rule 37. (Doc. No. 159.)

or party" that is found to have violated the rule or to be responsible for such a violation. Fed. R. Civ. P. 11(c)(1).

In the Sixth Circuit, the "test for the imposition of Rule 11 sanctions is whether the [individual's] conduct was objectively reasonable under the circumstances." *Nieves v. City of Cleveland*, 153 F. App'x 349, 352 (6th Cir. 2005) (citing *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989)). To determine objective reasonableness, the court must ask "whether the position advanced by a party was supported by a reasonable inquiry into the applicable law and relevant facts." *Advo Sys., Inc. v. Walters*, 110 F.R.D. 426, 430 (E.D. Mich. 1986) (citations omitted). Whether a "reasonable inquiry" was conducted "is judged by objective norms of what reasonable attorneys would have done." *In re Big Rapids Mall Assoc.*, 98 F.3d 926, 930 (6th Cir. 1996). "Courts must not 'use the wisdom of hindsight,' but must instead test what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Gibson v. Solideal USA, Inc.*, 489 F. App'x 24, 29–30 (6th Cir. 2012) (quoting *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010)). This objective standard is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see also Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003) ("A good faith belief in the merits of a case is insufficient to avoid sanctions.").

## III.    THE PARTIES' ARGUMENTS

RDN asserts that Second Ave and its counsel violated Rule 11, warranting the imposition of sanctions, by:

> (1) filing this lawsuit in bad faith, several months after "deciding to stop issuing payments to RDN under its binding contract," as part of an "obvious plan to wrongly use the judicial system to force RDN to incur the costs of defending it such that RDN would agree to renegotiate the terms of the [Amended] Agreement" (Doc. No. 130, at 5), when Second Ave and its counsel knew or should have known at the

time the lawsuit was filed that the factual allegations regarding Liebmann's "joint representation" were false, as the record establishes that Miller never intended to seek legal counsel in connection with the formation of the Original Agreement and that he himself was the source of the relevant terms of the agreement;

(2) failing to undertake a "reasonable inquiry" prior to filing the Complaint, which would have quickly revealed, from documents that Miller sent or received in connection with the Original Agreement, that there was no support for Second Ave's claims, and a conversation with Second Ave's counsel for the negotiation of the Amended Agreement would have established no unconscionability or overreaching with respect to the Amended Agreement;

(3) failing to dismiss the lawsuit in a timely fashion, after it became apparent that Second Ave's claims lacked any evidentiary or legal support;

(4) improperly using this lawsuit to gain publicity, in violation of the confidentiality provisions of the Amended Agreement, and pursuing a campaign of personal attacks on Liebmann;

(5) filing the Rule 41(a) Motion for Voluntary Dismissal under false pretenses, citing pandemic-related business losses, when the true reason for their "change of heart" was that they wanted to avoid further discovery into Second Ave's financial transactions and, possibly, to avoid Rule 11 sanctions; and

(6) engaging in "repeated discovery abuses," thus "needlessly extending and delaying the discovery process" (Doc. No. 130, at 9, 21).

Second Ave filed a lengthy Response in opposition to the Motion for Sanctions (Doc. No. 135), along with the Declarations of two of its attorneys, a corporate representative, and a consulting attorney out of a law firm based in Memphis who was retained by Second Ave in December 2020 to "assist with its analysis of the case and, in particular, its motion practice related to the November 25, 2020, Motion to Compel." (Doc. No. 135-2 ¶ 12.) Second Ave argues, in a nutshell, that:

(1) Second Ave's claims are not, and never were, frivolous;

(2) Counsel undertook objectively reasonable efforts to ascertain the evidentiary basis for Second Ave's claims before filing suit, and the fact that the court has ruled against the plaintiff on its claims "does not make the Complaint 'not well grounded in fact' – it reflects merely a disagreement as to the meaning of those facts" (Doc. No. 135, at 9);

(3) the lawsuit was not filed for an improper purpose, and RDN's assertions to the contrary are not supported by actual evidence;

(4) Counsel continued to comply with its Rule 11 obligations during the course of this litigation, including by retaining a "legal ethics consulting expert" (Doc. No. 135, at 17) who assisted with, among other things, the consideration of whether to appeal Judge Frensley's Order on the Motion to Compel, and, in any event, the Magistrate Judge's ruling is not the "law of the case" such that continuing to litigate after his ruling did not violate Rule 11;

(5) Second Ave's Motion for Voluntary Dismissal was not filed for an improper purpose, and it was filed before Second Ave received notice of RDN's intent to file its Motion for Sanctions;

(6) discovery disputes are not a proper basis for Rule 11 sanctions; and

(7) Rule 11 is not intended as a fee-shifting statute, and attorney's fee awards are generally discouraged under Rule 11.

## IV.    DISCUSSION

RDN moves for sanctions based on alleged violations of 11(b)(1), (b)(2), and (b)(3). Violation of any one of these subsections may justify an award of sanctions. *See, e.g.*, *Hertel v. Mortgage Elec. Registration Sys., Inc.*, No. 1:12-CV-174, 2013 WL 706903, at *1 (W.D. Mich. Feb. 26, 2013) (awarding sanctions under Rule 11(b)(1) after finding that the plaintiffs' claims were not objectively frivolous, even though ultimately not colorable, and declining to award sanctions under Rule 11(b)(2)).

### A.    RDN Has Not Established a Violation of Rule 11(b)(1)

Presenting or advocating a written paper violates Rule 11(b)(1) if it is done "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The analysis of an improper purpose under Rule 11(b)(1) resembles the analysis of bad faith or an improper purpose under a court's inherent power to sanction a party by shifting fees. *See BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010). Under that standard, pursuing an action that is without merit may be evidence of

bad faith, but a court "must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id.* at 752 n.4 & 753 (emphasis in original). "Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose," but such conduct may not be shown only by knowing pursuit of a meritless claim. *Id.* at 754.

RDN asserts that Second Ave's Complaint and the Motion for Voluntary Dismissal were both filed for an improper purpose, in violation of Rule 11(b)(1). In support of this claim, RDN argues that Second Ave's bad faith is demonstrated by its failure to file the lawsuit under seal, as required by the confidentiality provision in the Amended Agreement, and its failure to provide advance notice of the lawsuit to RDN. (Doc. No. 130, at 19.) Second Ave's counsel then "made public comments to the press regarding this case, specifically disparaging the professional conduct of RDN's former legal counsel, Mr. Liebmann." (*Id.*) RDN argues that counsel's and Second Ave's decision to make such disparaging comments is "completely indefensible, particularly considering counsel's own ethical decisions in filing and then proceeding with this bad faith litigation." (*Id.*)

RDN's hyperbole notwithstanding, while the filing of the Complaint not under seal constituted a violation of the Amended Agreement's confidentiality provision, as the court already determined in ruling on RDN's Motion for Partial Summary Judgment, RDN did not immediately move for a protective order to seal the Complaint, and it filed its Answer and Counterclaim publicly. Not until June 2020, more than five months after the initiation of the lawsuit, did the parties file a Joint Motion for Protective Order and a proposed Agreed Protective Order, which the court subsequently entered. (Doc. Nos. 22–24.) The pleadings themselves have never been placed

under seal. The court finds that the plaintiff's failure to file under seal does not constitute evidence of bad faith or an improper motive in filing suit. Regarding notice, Jay Bowen, lead counsel for Second Ave, has presented evidence that he did, in fact, provide pre-suit notice to RDN's counsel of Second Ave's intent to file suit. (Doc. No. 135-1, Bowen Decl. ¶¶ 51–58.) Moreover, counsel's brief responses to questions from a reporter who contacted him after the lawsuit was filed (*see* Bowen Decl. ¶¶ 65–67) hardly qualifies as pursuit of a "campaign of personal attacks" of the type that might independently justify sanctions. (*See* Doc. No. 130, at 20 (quoting *Lockheed Martin Energy Sys., Inc. v. Slavin*, 190 F.R.D. 449, 458 (E.D. Tenn. 1999)).)

RDN contends that the fact that Second Ave had ceased making payments on the Amended Agreement months before it filed suit is evidence of its bad faith. In response to this argument, Second Ave asserts that it is nonsensical to claim that non-performance of a contract, *per se*, constitutes evidence of bad faith. It also points out that there were several pre-suit discussions between the parties, during none of which did Miller or any other person on behalf of Second Ave state or imply that the motivation for filing suit was to force RDN to the negotiating table. (Bowen Decl. ¶ 49.) Rather, according to Bowen, Second Ave filed suit to "set aside an overreaching and unconscionable contract." (Bowen Decl. ¶ 48.) Second Ave also contends that RDN's overreaching was evidenced, in part, "by its unfounded 2019 claim to revenues generated from the completely unrelated Patsy Cline Museum," a claim that counsel for RDN continued to espouse during these pre-suit discussions. (Doc. No. 135, at 23–24; *see also* Bowen Decl. ¶ 50.) According to Bowen, RDN did not abandon its claim to royalties from the Patsy Cline Museum until after Second Ave filed suit, during a telephone conference between the court and the parties. (Doc. No. 135, at 24; Bowen Decl. ¶ 50.)

The court is not persuaded that simply stopping payments on a contract, thereby arguably breaching it, constitutes evidence that a lawsuit was filed for an improper purpose. The Sixth Circuit has held that the bad-faith exception to the American rule regarding allocation of attorney's fees, at least, does not allow an award of fees based only on "bad faith in the act underlying the substantive claim"—as distinct from "[b]ad faith occurring during the course of the litigation" and "bad faith in bringing an action." *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1230, 1231 (6th Cir. 1984). In this instance, Second Ave's act of ceasing payment on the Amended Agreement gave rise to a breach of contract claim by RDN, but RDN also seeks to make it evidence of bad faith on the part of Second Ave in filing its own lawsuit. The act of ceasing payment, however, was not "wrongful conduct" in instigating or pursuing the litigation. *Id.* at 1231. The court finds that this action does not constitute evidence of bad faith or improper purpose for purposes of Rule 11(b)(1) either.

RDN also claims that Second Ave violated Rule 11(b)(1) by filing its Rule 41(a) motion "based upon false information and for an improper purpose." (Doc. No. 130, at 26.) In particular, RDN claims that Second Ave's stated basis for the request for a voluntary dismissal—the financial impact of the pandemic—is a lie. RDN contends that this excuse is refuted by the fact that the Johnny Cash Museum was only shut down for a few months in 2020, but Miller has allegedly used Second Ave as a "personal bank account" from which he has effected the transfer of millions of dollars to his other business enterprises in 2019 and in 2020, when Second Ave was supposedly adversely impacted by the pandemic. RDN contends that this motion was filed for an improper purpose, in particular, because Second Ave wanted to avoid further disclosure of its financial transfers to Miller's other businesses. RDN also suggests that, in filing the motion, Second Ave sought to avoid the imposition of Rule 11 sanctions.

The evidence to which RDN points does not establish that Second Ave filed its Rule 41(a) motion for an improper purpose. Citing Second Ave's corporate representative Ryan Cowell's deposition testimony regarding "large transfers between [Second Ave] and Mr. Miller's other entities," RDN speculates that Second Ave "understandably [did] not want to continue to be forced to divulge this information to RDN." (Doc. No. 135, at 28.) Ryan Cowell also submitted a Declaration on behalf of Second Ave, in which he attests that Second Ave has been and is currently an "anchor business that has provided funding" for other business ventures in downtown Nashville owned or co-owned by Miller, that these businesses employ nearly 300 people, that all of the businesses were adversely impacted by the pandemic, and that there is nothing inherently improper about intercompany transfers and loans. (Doc. No. 135-3, Cowell Decl. ¶¶ 3–6.) He also attests that the "fact that Second Ave generated income in 2020 does not mean it was not and i[s] not experiencing economic hardship as it struggles to keep itself and its sister businesses afloat." (*Id.* ¶ 7.) RDN's speculation notwithstanding, the court does not detect an improper purpose for filing the Rule 41(a) motion merely from the deposition testimony of Ryan Cowell and the evidence of intercompany transfers and loans between Second Ave and its sister companies. Moreover, filing a Rule 41(a) motion based on a conclusion that the economic costs of litigation no longer justify the litigation itself is not an inherently improper purpose for seeking dismissal.

Regarding RDN's speculation that Second Ave sought to escape Rule 11 sanctions, it is apparent from the record that, even if RDN had been threatening such a motion, it did not serve the Motion for Sanctions on Second Ave until *after* Second Ave filed its Motion for Voluntary Dismissal. While RDN states in its motion that it had been threatening for some time to file a Rule 11 motion, thus providing notice to Second Ave and its counsel of that possibility, RDN has not submitted actual evidence in support of that claim. Moreover, one obvious purpose of threatening

a Rule 11 motion is to induce the other party to dismiss its suit, which is what Second Ave attempted to do.

Finally, RDN points to alleged discovery abuses by Second Ave as evidence of bad faith, including Second Ave's representing to the court that it needed to take depositions in order to respond to RDN's Motion for Partial Summary Judgment and then failing ever to take those depositions, repeatedly failing to disclose relevant and responsive documents in response to RDN's requests, producing a Rule 30(b)(6) witness who was inadequately prepared to answer questions in the areas of inquiry RDN had already identified, and repeatedly obstructing the scheduling of depositions. (Doc. No. 130, at 8–15, 21–23; *see also* Doc. No. 109, Zeigler Decl. and exhibits.)

In response, Second Ave points out that Rule 11 does not apply to "discovery disputes." (Doc. No. 135, at 29.) While that is true, *see* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."), the Sixth Circuit has nonetheless repeatedly recognized that "Rule 11 sanctions are nonetheless proper where, . . . instead of withdrawing a complaint or agreeing to dismissal, a plaintiff 'continued to litigate after it became clear that his claim was frivolous, unreasonable or without foundation.'" *Dearborn St. Bldg. Assocs., LLC v. Huntington Nat. Bank*, 411 F. App'x 847, 851 (6th Cir. 2011) (quoting *Bailey v. Papa John's USA, Inc.*, 236 F. App'x 200, 203 (6th Cir. 2007); other citations omitted). That is, the "gravamen" of a Rule 11 claim is the "persistence in pursuing [a] claim after the pleader has or should have become aware of its lack of merit." *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 373–74 (6th Cir. 1996). Thus, for example, the continued pursuit of discovery after a party has become aware that its claims are without merit could warrant an award of attorney's fees incurred in the pursuit of such discovery as a proper sanction. *See, e.g.*, *Bailey*, 236 F. App'x at 206 (affirming an award of attorney's fees

incurred by the defendant in defending against a frivolous claim after the plaintiff had become aware of the lack of foundation for the claim). But it is questionable whether discovery abuses, *per se*, would warrant sanctions under Rule 11(b)(1).

Regardless, having reviewed the materials submitted by both parties, including the Declarations of counsel on both sides and the supporting exhibits, the court finds that there is a factual dispute as to whether Second Ave actually engaged in improper discovery tactics, one which the court will not resolve absent a properly filed and supported Rule 37 motion—the filing of which the court does not, at this juncture, encourage. In short, the alleged discovery abuses *per se* do not establish a violation of Rule 11(b)(1). Moreover, because RDN has not established that it is entitled to fees under Rule 11(b)(2) or 11(b)(3), as discussed below, there is no basis for an award of attorney's fees as a sanction for attorney's fees expended on discovery in the Rule 11 context.

**B.    Sanctions Under Rule 11(b)(2) Are Not Warranted**

As set forth above, Rule 11(b)(2) provides that, by presenting a pleading to the court, an attorney certifies that, "to the best of the person's knowledge, information, and belief, formed after [a reasonable] inquiry," "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." "[B]ecause Rule 11 carefully assigns responsibility between represented parties and their counsel, only attorneys may be held liable where the basis of a sanctions award is the frivolousness of a party's legal position." *Dearborn St.*, 411 F. App'x at 852 (citing Fed. R. Civ. P. 11(c)(5)(A)).

RDN seeks sanctions under Rule 11(b)(2), arguing that Second Ave and its attorneys did not "present a viable theory of liability" in filing the Complaint. (Doc. No. 130, at 1.) RDN does not present any argument in support of that assertion in its Motion for Sanctions and supporting

Memorandum. In its Reply brief, it posits for the first time that the "dearth" of caselaw from Tennessee or any other jurisdiction supporting a theory of unconscionability based on an attorney's breach of fiduciary duty or ethical conflict of interest in undertaking a joint representation establishes the unreasonableness of bringing suit on this basis. (Doc. No. 140, at 7.) While acknowledging that Rule 11 is not intended to sanction an attorney's pursuit of "creative" legal theories, so long as such creativity is "employed in service of a good faith application of the law or at least a good faith request for a change in the law" (*id.* at 8 (quoting *Christy v. City of Lansing*, 693 F. Supp. 558, 562 (W.D. Mich. 1988), *aff'd*, 893 F.2d 1334 (6th Cir. 1990))), RDN argues that, in this case, no "competent attorney . . . after appropriate investigation would have reasonably believed [Plaintiff's] claim[s were] grounded in fact or law." (*Id.* (quoting *Roberson v. Norfolk S. Ry. Co.*, No. 16-CV-13166, 2020 WL 4726937, at *6 (E.D. Mich. Aug. 14, 2020)).)[2]

The Complaint in this case was premised upon allegations that RDN's attorney improperly represented both RDN and Second Ave in the formation of the Original Agreement, that this joint representation constituted a conflict of interest and a breach of the lawyer's fiduciary duty, and that, as a result, RDN was afforded "extraordinary and overwhelmingly unequal bargaining power" and Second Ave was "deprived of the opportunity to receive independent legal advice." (Doc. No. 1, at 1–2.) In addition, Second Ave asserts that the resulting contract was "so unfair and one-sided that the agreement [was] unconscionable." (*Id.* at 2; *see also id.* ¶ 24 ("The Original Agreement was one sided and the financial terms so unreasonably unfair as to make the agreement unconscionable.").) Second Ave alleges that the unconscionability of the Original Agreement,

---

[2] Insofar as RDN's arguments are premised on a lack of factual foundation, either at the outset or after discovery, the motion would fall under Rule 11(b)(3), which is addressed below. This distinction is important, because, as noted, only an attorney—not a represented party—can be sanctioned for violation of Rule 11(b)(2).

from which the Amended Agreement was derived, rendered the latter substantively unconscionable as well. (*See id.* ¶ 31 ("[T]he overall financial terms of the deal remained unconscionable and overwhelmingly favorable to [RDN].").) In other words, the claim of unconscionability was not premised entirely on the alleged conflict of interest on the part of Liebmann. Rather, the Complaint alleges that the terms of the agreements themselves were substantively unfair to the point of being "unconscionable."

Second Ave's lead counsel attests in his Declaration that he and his associate conducted a reasonable pre-suit inquiry by researching Tennessee's application of the doctrine of unconscionability and what facts were necessary to support such a theory. (Bowen Decl. ¶¶ 6–7.) This court's own research indicates that Tennessee law provides a basis for a party to seek to set aside a contract, or be excused for performance thereunder, based on unconscionability. Under Tennessee law, the "question of whether a contract or provision thereof is unconscionable is a question of law." *Taylor v. Butler*, 142 S.W.3d 277, 284–85 (Tenn. 2004). And, "[i]f a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term." *Id.* at 285 (citing Restatement (Second) of Contracts § 208 (1981)). "Enforcement of a contract is generally refused on grounds of unconscionability where the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" *Id.* at 285 (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984). "An unconscionable contract is one in which the provisions are so one-sided, in view of all the facts and circumstances, that the contracting party is denied any opportunity for meaningful choice." *Id.*

Although the court ultimately granted summary judgment to RDN on the plaintiff's unconscionability claims, finding that the Amended Agreement was not unconscionable and that Second Ave's claim for setting aside the Original Agreement was barred by waiver and laches, the court has never rendered an opinion as to whether the Original Agreement was unconscionable. RDN, in fact, never sought summary judgment on that ground. The court finds now that Second Ave's legal claims, though ultimately unavailing, were nonetheless "warranted by existing law or by a nonfrivolous argument for extending . . . existing law." Fed. R. Civ. P. 11(b)(2).

On this basis, the court finds that sanctions against Second Ave's attorneys under Rule 11(b)(2) are not warranted.

### C. Sanctions Under Rule 11(b)(3) Are Not Warranted

The goal of Rule 11 is to deter the abuse of the legal process. *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citing *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988)). To that end, "the rule 'stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed.'" *Id.* (quoting *Herron*, 858 F.2d at 335). Moreover, the "reasonable inquiry" required by Rule 11 "is not a one-time obligation." *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 374 (6th Cir. 1996) (quoting *Herron*, 858 F.2d at 335). "[T]he plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11." *Id.* (quoting *Herron*, 858 F.2d at 335–36). "The conduct of counsel who are the subject of a sanction request is measured by an objective standard of reasonableness under the circumstances." *Merritt*, 613 F.3d at 626 (citation omitted).

Under these standards, the court must determine, first, whether it was, or should have been, clear to Second Ave and its counsel that the lawsuit was unsupported by the facts at the time it was filed and, second, whether it should have become clear at some later point during the course of the

litigation that Second Ave's action against RDN, or any defense against RDN's Counterclaims, was simply not sustainable on the facts.

Regarding the first question, RDN argues that it should have been obvious to Second Ave even before it filed suit that its claims were factually unsupported, because (1) the documentation in Second Ave's possession, including emails exchanged between Nueske and Miller in 2011 and 2012, leading up to the execution of the Original Agreement, establish that Miller "actually proposed the core terms of the Original Agreement" (Doc. No. 130, at 3 (citing Doc. Nos. 109-26, 109-27); *see id.* at 18); (2) Second Ave lacked any evidence that Liebmann had an ethical conflict of interest or behaved inappropriately in the negotiations leading up to the execution of the Original Agreement; and (3) Miller's former counsel, Kelly Frey, proposed the terms of the Amended Agreement. RDN also argues that it is clear from the record that counsel for Second Ave failed to undertake the required "reasonable inquiry" prior to filing the Complaint, because, if they had done so, "it would have been readily apparent" from the referenced emails that Second Ave's claims lacked factual support, and if counsel had bothered to confer with Frey, "it would have been apparent that Plaintiff had no claim here" either. (Doc. No. 130, at 18.) In particular, RDN points to Frey's deposition testimony stating that he acted as a "zealous advocate" for his client during the negotiation of the Amended Agreement and that he would never suggest to a client that he sign an agreement that was "unconscionable." (*Id.* at 19 (citing Doc. No. 109-24, Frey Dep. at 72, 242).)

The documentation to which RDN points, however, is equivocal at best. The email exchanges from 2011 and early 2012 indeed establish that Miller proposed the original, "core" terms of the sponsorship arrangement ultimately incorporated into the Original Agreement. They also establish that Miller was very concerned, from the outset, about Nueske's proposal of getting an attorney involved in the negotiations of the agreement after the terms had essentially been

hammered out. Nueske assuaged Miller's concerns, assuring him that all would be well and that they would reach a fair deal. (Doc. No. 109-26.) Standing alone, these emails neither establish nor debunk Second Ave's theory that Liebmann acted improperly in the course of the negotiations of the Original Agreement, and they say nothing about the ultimate fairness—or lack thereof—of the final terms of that contract.

For his part, Second Ave's counsel, Jay Bowen, states in his Declaration that Miller first consulted him with questions about the agreements with RDN and Second Ave's obligations around 2018. Miller told him then that Second Ave continued to make royalty payments and that the payments continued to increase over time. Miller also told him that RDN had asserted that it was entitled to royalties on revenues in connection with the Patsy Cline Museum. Miller consulted him again in 2019 or 2020. (Bowen Decl. ¶ 5.)

Bowen also states that he and his associate conducted research on Tennessee law on unconscionability and that his pre-suit inquiry was focused on whether the facts, if established, met the elements. One factor relevant to a finding of unconscionability—though not the only factor—was whether his client had been represented by counsel in the negotiations for the Original Agreement. From the facts conveyed to him by Miller, Bowen concluded that it was possible that Miller had not been represented. To confirm the facts provided to him by Miller, he interviewed Kelly Frey and reviewed Frey's and Second Ave's files. This investigation led him to examine whether Bert Liebmann had become "so involved in advising both parties (Miller and RDN/Nueske) in other transactions, as he indisputably was, and whether one may reasonably conclude, including one in Miller's position, that he was entitled to rely on [Liebmann's] advice . . . and that an attorney-client relationship may have been created in the sponsorship negotiations." (Bowen Decl. ¶ 11.)

Bowen concluded, based on the evidence he considered, that there was a "good faith factual basis for this argument and for the Court to so conclude." (*Id.* ¶ 12.) Moreover, Miller submitted a Declaration in which he attested to his understanding of Liebmann's role in the negotiations and Miller's understanding that Liebmann would advise both parties on reaching a "mutually fair deal." (*See* Doc. No. 38-3, Miller Decl. ¶¶ 14–15, 19.) Bowen also points to emails in the record that he construed as showing that Liebmann was giving legal advice to both Miller and Nueske with respect to the Original Agreement, as well as other contracts the parties were involved with at the same time, including a Lease Agreement and a License Agreement. Bowen concluded from these documents that Liebmann's conduct was, at best, "ethically conflicted and ambiguous." (Bowen Decl. ¶ 28.) Bowen also concluded from his review of the documents that, after Liebmann became involved, the terms of the deal became substantially more favorable for RDN in at least two critical respects, including that the term of the sponsorship (and payment obligations by Second Ave) was extended from five years to ten, and the amounts payable to RDN increased. (Bowen Decl. ¶¶ 22.)

Bowen attests that his conversations with Kelly Frey "provided further support for Miller's factual contentions" but that many of the communications involving Frey were subject to attorney-client privilege, which Bowen did not want to waive. (Bowen Decl. ¶ 30.) Bowen offered to produce documents supporting his position for *in camera* review, in connection with Second Ave's Motion to Compel, but Magistrate Judge Frensley declined the offer. In sum, Bowen concludes, he and others in his firm conducted an "in-depth analysis of Tennessee law concerning . . . the unconscionability of contracts prior to initiating suit, and [he] determined that there was a good faith basis, based on facts known to [him], to bring a claim to set aside the Amended Agreement based on its substantive and procedural unconscionability." (Bowen Decl. ¶ 38.)

Bowen also discusses his firm's retention of a consulting expert on legal ethics to assist with the motion practice related to the Motion to Compel the production of certain communications involving Liebmann. The firm continued to consult with the ethics expert, Brian Faughnan, through March 2021. Faughnan's involvement included providing assistance in determining whether to appeal the Magistrate Judge's Order denying the Motion to Compel and whether to persist with deposing Liebmann. Ultimately, Second Ave chose to do neither.

Although the Magistrate Judge ultimately disagreed with the question of whether Liebmann represented Miller in negotiating the Original Agreement, Bowen points out—and the court agrees—that the finding of no joint representation was not dispositive of the question of whether the Original Agreement was unconscionable. The arguable unconscionability, in counsel's mind, arose from a number of factors, including the circumstances surrounding the execution of the Original Agreement; Miller's communications with Nueske about what was fair; the circumstances surrounding the execution of the Amended Agreement, the terms of which were largely shaped by those of the Original Agreement; the payments to RDN under both agreements, when compared to the contribution by RDN to the formation of the Johnny Cash Museum; and RDN's course of conduct, including its demand for royalties from the Patsy Cline Museum. Counsel attests that suit was filed on behalf of Second Ave to "set aside an overreaching and unconscionable contract and not to harass RDN, delay payment, or for any other improper purpose." (Bowen Decl. ¶ 48.) Notably, even now, RDN does not make any argument regarding the substantive unconscionability of the terms of the Original Agreement; instead, it is focused entirely on Second Ave's argument regarding Liebmann's role in the process.

The court observes at this juncture that it has reviewed and approves Magistrate Judge Frensley's determination that attorney's fees to RDN were not warranted in connection with its

successful opposition to Second Ave's Motion to Compel communications between Liebmann and Nueske. Magistrate Judge Frensley found no evidence of bad faith or misconduct and concluded that "Second Ave's position, while erroneous, legitimately led it to bring its motion." (Doc. No. 159, at 5.) The same conclusion informs this court's determination that Second Ave's initial investigation reasonably led it to believe that there were facts sufficient to justify bringing suit to set aside the parties' contracts on the grounds of unconscionability, premised in part on Liebmann's ambiguous position, and that Second Ave had a reasonable basis to continue to pursue the litigation at least through the filing of its Motion to Compel. Moreover, as Second Ave argues, the denial of its Motion to Compel based on the finding of no joint representation by Liebmann weakened Second Ave's unconscionability argument, but it did not eliminate it altogether. And finally, although the court entered summary judgment for RDN on Second Ave's claims to set aside the Original and Amended Agreements, the court has never been called upon to rule as a matter of fact or law on the unconscionability of the Original Agreement.

The court finds, in sum, no violation of Rule 11(b)(3), as Second Ave's factual contentions had sufficient evidentiary support from the outset of this lawsuit and at least through the filing of Second Ave's Motion for Voluntary Dismissal. After that point, it appears that most of the attorney's fees incurred by the parties cannot be attributed to Second Ave's conduct but, rather, to RDN's aggressive pursuit of its own claims and the litigation of this Motion for Sanctions.

## V.    CONCLUSION

Based on its review of all the facts and circumstances presented here, the court finds no evidence that Second Ave or its counsel abused the legal process, failed in their duty to conduct a pre-filing inquiry into the facts and the law, or failed to comply with their continuing responsibility to review and reevaluate the pleadings as the case progressed. There was no violation of Rule 11(b)(1), (b)(2), or (b)(3), and RDN's Motion for Sanctions will be denied.

An accompanying Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge